Eugene BAILEY, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 13642.

United States Court of Appeals
District of Columbia Circuit.

Argued April 30, 1957.

Decided June 13, 1957.

Petition for Rehearing Denied
July 8, 1957.

Writ of Certiorari Denied Jan. 6, 1958.
See 78 S.Ct. 351.

Mr. James J. Laughlin, Washington, D. C., with whom Mr. Albert J. Ahern, Jr., Washington, D. C. (both appointed by the District Court) was on the brief, for appellant.

Mr. Fred L. McIntyre, Asst. U. S. Atty., with whom Mr. Oliver Gasch, U. S. Atty., and Messrs. Lewis Carroll and Joel D. Blackwell, Asst. U. S. Attys., were on the brief, for appellee.

Before PRETTYMAN, WILBUR K. MILLER and BURGER, Circuit Judges.

PRETTYMAN, Circuit Judge.

Appellant was indicted, tried and convicted for murder in the first degree. His trial counsel were appointed by the District Court and voluntarily pursued this appeal, urging reversal for several reasons. They told the District Court and tell us that they have been unable to secure the cooperation of the 'accused, who insists that he does not desire to live. We have read the entire record.

The facts are simple, uncontested, and can be outlined briefly. Bailey and his wife were separated, being unable to get along with one another. Prior to the fatal date he sought unsuccessfully to see

her. In his later statement to the police he said he had inquired of an officer during this period whether his wife had secured a warrant for his arrest. He said he had asked the police to persuade her, in the event she secured a warrant, to request the District Attorney or a judge to have him admitted to a hospital for mental examination because he could not get along with her. A police officer verified this statement. The officer said he had tried unsuccessfully to reach the wife but did not follow up the suggestion of mental observation. He explained that Bailey did not exhibit any abnormal characteristics and that the only reason assigned for mental observation was that he (Bailey) could not get along with his wife.

Bailey, contemplating doing his wife harm, secured a gun on December 3, 1955. Two days later he went to their former apartment, entered, and waited for her. Her son (his stepson) came home, and Bailey tied him up with a rope and put him in a closet, showing him the gun and saying he wanted no "funny business" from him. The boy testified this was about eight-thirty in the evening. A telephone call came, which Bailey permitted the boy to answer, and by it he learned his wife was at her mother's home. He untied the boy and required him to walk with him the six or seven blocks to the grandmother's house. Entering, Bailey asked his wife to accompany him outside, saying he wanted to talk to her. The boy went along as they walked some four or five doors down the street. Bailey asked her a question, and when she answered he shot her. In his statement to the police he said the gun discharged the first time accidentally and that thereupon he became panicky and shot her three times. There was no quarrel and no heated argument. The event was witnessed by the boy and also by the grandmother from the doorway of her home. Bailey went home, changed his clothes, and took a streetcar to the police station. There he laid the gun on the counter and announced that he had shot his wife. He was questioned and told the full story. This was about ten o'clock in the evening. At about eight o'clock the next morning Bailey repeated his account, and it was typed and signed. He was taken before the coroner before noon that day.

Before the trial, upon request of the District Attorney, Bailey was examined twice at the jail by a psychiatrist from the staff at St. Elizabeths Hospital. These examinations were on February 10 and March 16, 1956. He was also sent from the jail to St. Elizabeths, where he was extensively examined by the doctor who had examined him in jail and by another doctor. Those psychiatrists were later called by the court as the court's witnesses at the trial, and they testified they had found no mental disease or defect in Bailey, that his I. Q. was average (98) and his reactions and actions were normal. Both agreed to the possibility of a temporary derangement for a period of time, which might have included the fatal date, but neither would express a firm opinion as to whether or not Bailey had such a condition.

Counsel for the defense pleaded both for a verdict of not guilty by reason of insanity, which they urged as a temporary condition brought on by brooding over a great unhappiness, and also for a verdict no worse than second-degree murder, on the theory there was reasonable doubt as to premeditation. The court instructed with considerable care, notably calling attention to the fact that, the burden of proof being on the Government, a reasonable doubt as to premeditation of murder would require a verdict of second-degree murder rather than of first-degree murder. The court instructed upon the insanity issue, following the formula of the Durham case,[1] and specifically calling attention to the right-wrong and irresistible impulse tests as possibly applicable here.

1. Durham v. United States, 94 U.S.App.D.C. 228, 214 F.2d 862, 45 A.L.R.2d 143 (D.C. Cir.1954).

■ Counsel for appellant press upon us three points. The first is that when, pursuant to cross examination by the prosecutor, the psychiatrists testified concerning Bailey's mental condition after May 3, 1956, when he was admitted to St. Elizabeths Hospital, the specific prohibition in the last sentence of Section 4244, Title 18, of the United States Code was violated. That sentence reads:

"A finding by the judge that the accused is mentally competent to stand trial shall in no way prejudice the accused in a plea of insanity as a defense to the crime charged; such finding shall not be introduced in evidence on that issue nor otherwise be brought to the notice of the jury."[2]

The testimony concerning the examination between May 3rd and July 3rd was brought out by defense counsel. Dr. Cushard was asked whether he was instructed to determine Bailey's mental condition at the time of the examination or at the time of the offense. There was no objection to the doctor's response to the prosecutor's subsequent question, relating to the doctor's finding. Dr. Dobbs, the other psychiatrist, examined Bailey only after he was admitted to St. Elizabeths. He was asked by defense counsel what his findings were at the time of the examination. Of course both doctors were asked for an opinion as to Bailey's mental condition as of the date of the alleged offense.

■ Be all that as it may, Section 4244 prohibits the admission of only two things at the trial of an accused: (1) statements made by the accused during the course of an examination[3] and (2) a finding by the court that the accused was competent to stand trial. No finding of the latter sort was introduced; since Bailey was never found incompetent it is doubtful that there ever was a court finding of competency to stand trial. And the only statements of the accused to the doctors put in the record were in response to specific questions of defense counsel. They evidently wanted in the record Bailey's account of why he shot his wife. They asked Dr. Dobbs, "What reason did he give you for shooting his wife?" The doctor replied that Bailey told him he was very fond of his wife and could not stand being separated from her. Dr. Cushard was asked a similar question and gave a similar answer. In addition to the fact that the statutory prohibition is only that such statements not be admitted in evidence *against* the accused, we think an accused may waive the statutory protection. The facts of the shooting were clearly established by two eyewitnesses and by Bailey's immediate and voluntary oral account to the police. In the latter Bailey said he shot his wife because he just could not get along with her. Defense counsel secured from the doctors an agreement that it could be possible for a brooding over a loved one so to work on the mind as to culminate in a rage and bring on a dethronement of reason. In this context it is easy to see why defense counsel wanted the jury to hear Bailey's statements to the doctors. Whether such statements by an accused are admissible over objection by the prosecutor we do not say. No such point is made here. We find no error in this phase of the case.

■ The second point urged by counsel for appellant is that the trial court should have declared a mistrial when the prosecutor, in his closing argument to the jury, made the following comment:

"Well, I think it is fair for me to say, ladies and gentlemen, in view of the defense counsel's statement, that your verdict here today does not necessarily mean that that

---

2. 63 Stat. 686 (1949).

3. In addition to the sentence above quoted, Section 4244 also provides:
"No statement made by the accused in the course of any examination into his sanity or mental competency provided for by this section, whether the examination shall be with or without the consent of the accused, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding."

[death by electrocution] will happen."

But the court instantly stopped him, saying:

"Oh, no, Mr. Blackwell, I don't think you should refer to that, because, while an appeal can be taken on questions of law, the jury's verdict on the facts will be final."

Thereupon the prosecutor apologized to the court and withdrew the remark. He had been instigated in making the remark by the lurid description by defense counsel of the result of a first-degree verdict with its mandatory death sentence. We find no reversible error in the incident, especially in view of the judge's prompt affirmative statement that "the jury's verdict on the facts will be final."

█ The third point pressed by defense counsel here is that the trial court erred when it did not include in its instruction on insanity the causal connection instruction set forth in the Durham opinion, supra. But the causal connection expression in Durham was an explanation of the phrase "product of", and the opinion was specific and emphatic in saying that we did not there mean to prescribe a formula for unvarying use *in haec verba*. In the case at bar the trial judge explained to the jury that to be found not guilty by reason of insanity it must appear that the defendant suffered from a mental disease or defect and that the act was the product thereof; and that the burden of proof beyond a reasonable doubt was on the Government on that issue. The fact is that, while the court properly submitted the issue to the jury, it was upon a bare minimum of evidence of insanity; indeed it appears that it was submitted chiefly because it was pleaded. There was little, if any, evidence of insanity. We find no error in this respect.

The judgment of the District Court must be and is

Affirmed.

WILBUR K. MILLER, Circuit Judge, concurs in the result.