UNITED STATES of America, Plaintiff-Appellee,

v.

John Edward SMITH, Jr., Defendant-Appellant.

No. 18095.

United States Court of Appeals Sixth Circuit.

Nov. 25, 1968.

As Amended Dec. 12, 1968.

Lowell T. Hughes (Court Appointed) Ashland, Ky., for appellant.

James F. Cook, Lexington, Ky. (George I. Cline, U. S. Atty., James F. Cook, Asst. U. S. Atty., Lexington, Ky., on the brief), for appellee.

Before EDWARDS, CELEBREZZE and McCREE, Circuit Judges.

EDWARDS, Circuit Judge.

This case presents for the first time in this decade in this circuit the question of what is or ought to be the test of criminal responsibility concerning a defendant's plea of insanity in a criminal case.

Appellant was charged with robbing the First Federal Savings & Loan Association of Ashland, Kentucky, on October 19, 1965, in violation of 18 U.S.C. § 2113 (a) and (d) (1964). In subsequent proceedings to determine his competency to stand trial, an order was entered on February 4, 1966, finding him not competent and he was sent to a federal medical center to receive psychiatric treatment. Again on July 13, 1966, on psychiatric reports from the federal medical center an order was entered finding him still incompetent to stand trial.

On December 2, 1966, another hearing on appellant's competence was held and he was declared competent to stand trial. The trial was held May 1 and 2, 1967. Appellant's defense was insanity, and two psychiatrists testified for him as expert witnesses. One of them at the time of trial was on the staff of the United States Public Health Service Hospital at Lexington, Kentucky, where appel-

lant had been treated. The other psychiatrist had likewise been on the staff of the Lexington hospital at the time he examined appellant. Both testified that at the time of the offense appellant was suffering from serious mental illness (schizophrenia). Neither testified that appellant was so mentally ill as not to know the difference between right and wrong. One testified that "this act was to a substantial degree a product of his mental illness." And the other said, "In my opinion this action could have certainly been related to his mental disorder as to cause and effect." He answered affirmatively a question as to whether appellant's illness had substantially impaired his ability to conform his conduct to what he knew to be right.

The following portion of Dr. Pfeiffer's testimony is typical of the diagnosis of each psychiatrist:

"Q. Based upon your examination, Doctor, do you have an opinion as to whether or not Mr. Smith was suffering from the mental illness which you have described, schizophrenic reaction, on October 19, 1965?

"A. I saw him during December of 1965 and at that time made a diagnosis of a chronic schizophrenic reaction. We don't use that term unless we think the illness has existed for at least six months or so. I think that would mean by implication that he must have carried that diagnosis then, too. This is the way we make medical diagnoses. But obviously I didn't examine him on that date.

"Q. But your considered medical opinion is that he was suffering from that mental illness on October 19, 1965?

"A. Yes.

"Q. Now based upon your examination of the defendant and your diagnosis of this mental illness or defect at the time the robbery was committed, do you have an opinion based on a reasonable medical certainty as to whether

the robbery was the product of this mental illness or disorder?

"A. I would answer that that in my opinion this act was to a substantial degree a product of his mental illness.

"Q. What do you mean by a substantial degree, Doctor?

"A. It played a major role in his committing the act.

"Q. It played a major role?

"A. Yes.

"Q. Doctor, based upon your examination of the defendant again and your diagnosis of mental illness on October 19, 1965, the date the robbery was committed, do you have an opinion based on reasonable medical certainty as to whether the defendant at the time he committed the act charged was capable of knowing right from wrong in respect to such act, and if he did know the difference, whether as a result of his mental illness he was able to conform his actions to the requirements of the law?

"A. I think he knew that to rob a bank was unlawful. I'm not certain that he fully understood the implications of such an act. I think he knew that it was unlawful to rob a bank. As to the question of whether he was able to adhere to the right, I think here I would say that his ability in this regard was substantially impaired as the result of his emotional disorder.

"Q. Your testimony is that his ability to adhere to the right was substantially impaired?

"A. Yes."

The government produced no psychiatric testimony but relied upon cross-examination of appellant's expert witnesses, plus the testimony of its lay witnesses as to appellant's conduct and statements.

Appellant's attorney presented two requests to charge—one based upon the *Durham* rule,[1] and the other upon the American Law Institute's test of crimi-

---

1. The *Durham* rule states that "an accused is not criminally responsible if his unlawful act was the product of mental disease or mental defect." *Durham, v.*

nal responsibility.[2] The District Judge gave neither of these charges. Nor was the charge drawn from this circuit's last major treatment of the problem of criminal responsibility in Pollard v. United States, 282 F.2d 450 (6th Cir. 1960).[3] Instead, at the government's request, he gave the following charge:

"'Insane,' as used in these instructions, means such a perverted and deranged mental condition as renders a person incapable of distinguishing between right and wrong, or incapable of knowing the nature of the act he is committing; or, even where a person is conscious of the nature of the act he is committing, and is able to distinguish between right and wrong, yet his will—the governing power of his mind—has been so completely destroyed that his actions are not subject to it, but are beyond his control.

"For the purpose of throwing light upon the mental condition of the accused at the time of the alleged offense, the Jury may consider evidence of his mental state both before and after that time.

"Temporary insanity, as well as insanity of longer duration, is recognized by the law. If the Jury has a reasonable doubt, from the evidence in the case, whether the defendant was sane at the time of the alleged offense, he should be acquitted, even though it may appear that he was sane at earlier and later times."

This instruction is supported by dictum from the last time (1897) the United States Supreme Court considered an insanity charge. See Davis v. United States (I), 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895), and Davis v. United States (II), 165 U.S. 373, 17 S.Ct. 360, 41 L.Ed. 750 (1897). It is a variation of the classic M'Naghten right-wrong test:

"To establish a defense on the ground of insanity, it must be clearly proved that at the time of committing the act, the party accused was labouring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing; or if he did know it, that he did not know it was wrong." Daniel M'Naghten's Case, 8 Eng.Rep. 718, 722 (H.L. 1843).

■■■ A Supreme Court holding directly in point on the issue of criminal responsibility would, of course, foreclose our consideration of any alternative. But three factors weigh strongly against the *Davis* cases being regarded as such specific authority. First, the advance of scientific knowledge in the field of

---

United States, 94 U.S.App.D.C. 228, 214 F.2d 862, 874–875, 45 A.L.R.2d 1430 (1954).

2. The Model Penal Code provides that "A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of the law." MODEL PENAL CODE § 4.01 (Official Draft, 1962).

3. In *Pollard* this court approved the *M'Naghten* rule supplemented by irresistible impulse. The *M'Naghten* rule states: "To establish a defense on the ground of insanity, it must be clearly proved that at the time of committing the act, the party accused was labouring under such a defect of reason, from disease of the mind, as not to know the nature and

quality of the act he was doing; or, if he did know it, that he did not know it was wrong." Daniel M'Naghten's Case, 8 Eng.Rep. 718, 722 (H.L.1843).

The irresistible impulse test as approved in *Pollard* was drawn from an early Massachusetts case: "If then it is proved, to the satisfaction of the jury, that the mind of the accused was in a diseased and unsound state, the question will be, whether the disease existed to so high a degree, that for the time being it overwhelmed the reason, conscience, and judgment, and whether the prisoner, in committing the homicide, acted from an irresistible and uncontrollable impulse: If so, then the act was not the act of a voluntary agent, but the involuntary act of the body, without the concurrence of a mind directing it." Commonwealth v. Rogers, 48 Mass. (7 Metc.) 500, 502 (1844).

psychiatry since 1897 is itself sufficient to render inapplicable any case decided without benefit of modern knowledge. See Durham v. United States, 94 U.S. App.D.C. 228, 214 F.2d 862, 45 A.L.R.2d 1430 (1954), and authorities collected therein; Soboloff, Insanity and the Criminal Law: From M'Naghten to *Durham*, and Beyond, 41 A.B.A.J. 793 (1955). Second, the *Davis* cases were primarily concerned with burden of proof and laid down no rule of law as to a single insanity test. These cases, at most, said that giving the instruction at issue here was not prejudicial error in 1897. United States v. Freeman, 357 F.2d 606, 613–614 (2d Cir. 1966). And third, many courts prior to now have formulated tests in modern psychiatric terms with at least the tacit sanction[4] of the United States Supreme Court. United States v. Chandler, 393 F.2d 920 (4th Cir. 1968); United States v. Shapiro, 383 F.2d 680 (7th Cir. 1967); Pope v. United States, 372 F.2d 710 (8th Cir. 1967); United States v. Freeman, 357 F.2d 606 (2d Cir. 1966); Wion v. United States, 325 F.2d 420 (10th Cir. 1963), cert. denied, 377 U.S. 946, 84 S. Ct. 1354, 12 L.Ed.2d 309 (1964); United States v. Currens, 290 F.2d 751 (3d Cir. 1961); McDonald v. United States, 114 U.S.App.D.C. 120, 312 F.2d 847 (1962), modifying Durham v. United States, 94 U.S.App.D.C. 228, 214 F.2d 862, 45 A. L.R.2d 1430 (1954).

All of these courts have rejected the M'Naghten test. In *Durham*, Judge Bazelon for the D. C. Circuit said:

"We find that as an exclusive criterion the right-wrong test is inadequate in that (a) it does not take sufficient account of psychic realities and scientific knowledge, and (b) it is based upon one symptom and so cannot validly be applied in all circumstances." Durham v. United States, 94 U.S.App.D.C. 228, 214 F.2d 862, 874 (1954).

In *Currens*, Judge Biggs for the Third Circuit said:

"The vast absurdity of the application of the M'Naghten Rules in order to determine the sanity or insanity, the mental health or lack of it, of the defendant by securing the answer to a single question: Did the defendant know the difference between right and wrong, appears clearly when one surveys the array of symptomatology which the skilled psychiatrist employs in determining the mental condition of an individual." United States v. Currens, 290 F.2d 751, 766–767 (3d Cir. 1961).

In *Pollard*, Judge McAllister, speaking for the Sixth Circuit, in adding "irresistible impulse" to the M'Naghten test, cited authorities criticizing the use of M'Naghten alone. See Pollard v. United States, 282 F.2d 450, 455–457 (6th Cir. 1960).

In *Freeman*, Judge Kaufman for the Second Circuit said:

"The true vice of M'Naghten is not, therefore, that psychiatrists will feel constricted in artificially structuring their testimony but rather that the ultimate deciders—the judge or the jury—will be deprived of information vital to their final judgment. · For whatever the social climate of Victorian England, today's complex and sophisticated society will not be satisfied with simplistic decisions, based solely upon a man's ability to 'know' right from wrong." United States v. Freeman, 357 F.2d 606, 620 (2d Cir. 1966).

See also Diamond, Criminal Responsibility of the Mentally Ill, 14 STAN.L. REV. 59, 60–61 (1961).

■ In our instant case there was, of course, no occasion to give the M'Naghten charge at all. The defendant did not contend that he was incapable of understanding the difference between

4. See on this point Mr. Justice Marshall's recent opinion for the Court approving "fruitful experimentation" and "the developing productive dialogue between law and psychiatry." Powell v. Texas, 392 U.S. 514, 536–537, 88 S.Ct. 2145, 2156, 20 L.Ed.2d 1254 (1968).

right and wrong, and there was no testimony to support submission of that issue. Excessive emphasis upon the M'Naghten issue when the facts do not present it can prejudice the jury's consideration of other relevant tests of insanity.

Further, the charge given required the jury to find that defendant had a "perverted and deranged mental condition." No standards at all are offered the jury in relation to such a finding, and in normal parlance the word "perverted" [5] might tend to suggest a requirement that the jury find deviant sex practices on the part of the defendant.

The control test set forth in the charge of the court by its wording would seem to eliminate a finding of insanity as to any persons other than idiots or persons under the impact of psychotic panic or complete hallucination. The language is not calculated to suggest that criminal responsibility is absent when *the act charged* was caused by mental illness. On the contrary, it requires the jury to find that the "will—the governing power of his mind—has been so completely destroyed that *his actions* are not subject to it, but are beyond his control." (Emphasis added.)

The charge as given in this case appears to us little improvement on that given by Justice Tracy in 1724, that a man could escape punishment if he "doth not know what he is doing, no more than an infant, than a brute, or a wild beast." [6] We shall comment on the temporary insanity portion of the Judge's charge later.

■ In the light of modern knowledge, it is clear that the "right-wrong" test of criminal responsibility is inadequate. There are many forms of mental illness where the illness may be serious enough to deprive the person concerned of any actual choice of conduct where nonetheless he does possess knowledge of what is right or wrong in legal or moral terms.

Judge Sobeloff reminds us that:

"The Royal Commission reported in 1953 that the 'right and wrong' test had been objected to by experienced doctors for over a hundred years as 'based on an entirely obsolete and misleading conception of the nature of insanity, since insanity does not only, or primarily, affect the cognitive or intellectual faculties, but affects the whole personality of the patient, including both the will and the emotions. An insane person may therefore often know the nature and quality of his act and that it is wrong and forbidden by law, and yet commit it as a result of the mental disease.' [Report of the Royal Commission on Capital Punishment, 1949–1953. Cmd. No. 8932 at page 80.]" Sobeloff, Insanity and the Criminal Law: From M'Naghten to *Durham*, and Beyond, 41 A.B. A.J. 793, 794 (1955).

*Pollard,* of course, added a major new dimension to the insanity test as approved in this circuit. It is clear that *Pollard's* temporary insanity test is applicable, regardless of whether the defendant knew the difference between right and wrong. Where under the influence of sudden stresses mental illness developed which deprived a person of free choice of conduct, a jury could find him not guilty because of temporary insanity.

The irresistible impulse formula has, however, some serious deficiencies. It does not provide for consideration of those cases of mental illness where long brooding of a person mentally ill has as compelling a result as any sudden onset of temporary insanity. As Judge Bazelon stated in *Durham*:

"We find that the "irresistible impulse' test is also inadequate in that it gives no recognition to mental ill-

---

5. Perverted is defined as: "1: that has been perverted: twisted, corrupt, vicious * * * 2: marked by perversion esp. sexual. * * *" WEBSTER'S NEW INTERNATIONAL DICTIONARY 1688 (3d ed. 1961).

6. Rex v. Arnold, 16 How.St.Tr. 695, 764–65 (Eng. 1724).

ness characterized by brooding and reflection and so relegates acts caused by such illness to the application of the inadequate right-wrong test. We conclude that a broader test should be adopted." Durham v. United States, 94 U.S.App.D.C. 228, 214 F.2d 862, 874 (1954).

The Durham rule when formulated represented an historic break from the ironbound M'Naghten rule. It was hailed (and properly) as making psychiatric testimony both useful and welcome in the courts. See Sobeloff, Insanity and the Criminal Law: From M'Naghten to *Durham*, and Beyond, 41 A.B.A.J. 793, 794 (1955); Comment, Criminal Law—Reexamination of Tests for Criminal Responsibility, 53 MICH.L.REV. 963, 965 (1955); 40 CORNELL L.Q. 135, 138 (1954).

But it, too, had weaknesses. If there were any mental illness, any subsequent act might be termed "a product" in some sense of the illness. This fact, plus the fact that psychiatric testimony on the product test tends to invade the jury province, has led to modification of the *Durham* rule by the court which authored it. In McDonald v. United States, 114 U.S.App.D.C. 120, 312 F.2d 847, 851 (1962), the D.C. Circuit defined mental illness as "any abnormal condition of the mind which substantially affects mental or emotional processes and substantially impairs behavior controls." This modification appears to us to bring the D.C. Circuit rule very close to the formulation adopted by the ALI which we will discuss later.

Still another important effort has been made to formulate a legal test of criminal responsibility. In 1961 Judge Biggs of the Third Circuit made a careful analysis of the conflicting views on this topic and the Third Circuit adopted this test:

"The jury must be satisfied that at the time of committing the prohibited act the defendant, as a result of mental disease or defect, lacked substantial capacity to conform his conduct to the requirements of the law which he is alleged to have violated." United States v. Currens, 290 F.2d 751, 774 (3d Cir. 1961).

The primary distinction [7] between the Currens test as formulated by Judge Biggs and the ALI formulation is that the ALI retains specific reference to the M'Naghten test of knowledge of the wrongfulness of the act committed. Of course, the problem with M'Naghten as a test of insanity was that it defined a very limited class of the insane. M'Naghten was certainly deficient as an exclusive test. But the ALI test eliminates the exclusive character of M'Naghten while retaining its substance as one of the tests of criminal responsibility. We do not regard this difference as a critical one.

Four considerations in relation to what definition of criminal responsibility should be adopted in this circuit are, we believe: First, does it comport with the realities of scientific knowledge and medical and correctional facilities as they presently exist? Second, does it make fully available to the jury such psychiatric information as medical science has to offer in relation to the individual defendant? Third, is it a workable definition which a jury can understand? Fourth, does it serve the development of a generally acceptable federal standard?

In the Model Penal Code the ALI formulated this test:

"A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of the law." MODEL PENAL CODE § 4.01 (Official Draft, 1962).

---

**7.** A second distinction of great importance and difficulty is posed by an additional definition adopted by the ALI, MODEL PENAL CODE § 4.01(2) (Official Draft, 1962), which we discuss in footnote 8 infra.

Four federal circuits have adopted the ALI test squarely. United States v. Chandler, 393 F.2d 920, 927 (4th Cir., 1968); United States v. Shapiro, 383 F.2d 680, 686 (7th Cir. 1967); United States v. Freeman, 357 F.2d 606, 622 (2d Cir. 1966); Wion v. United States, 325 F.2d 420, 427 (10th Cir. 1963), cert. denied, 377 U.S. 946, 84 S.Ct. 1354, 12 L.Ed.2d 309 (1964). As we have pointed out, two other circuits (the Third Circuit in United States v. Currens, 290 F.2d 751 (3d Cir. 1961), and the D.C. Circuit in Durham v. United States, 94 U.S.App. D.C. 228, 214 F.2d 862 (1954)) have adopted formulations which we view as close approximations of the ALI test as we quote and apply it. Several states have likewise squarely adopted or indicated approval of the ALI test. Ill.Ann. Stat. ch. 38, § 6–2 (Smith-Hurd 1964); Vt.Stat.Ann. tit. 13, § 4801 (1959); State v. Shoffner, 31 Wis.2d 412, 143 N.W.2d 458 (1966); State v. Schantz, 98 Ariz. 200, 403 P.2d 521 (1965); State v. D'Haemers, 276 Minn. 332, 150 N.W. 2d 61 (1967).

■ We now elect generally to adhere to the test of criminal responsibility quoted above from the Model Penal Code.[8] We believe it to be a test which a jury will readily comprehend; one which comports with and makes available modern scientific knowledge and one which may serve to aid the continuing development of the federal law.

The questions for jury consideration pertaining to criminal responsibility when defendant offers an insanity defense are as follows:

1. Was he suffering from a mental illness at the time of the commission of the crime?

2. Was that illness such as to prevent his knowing the wrongfulness of his act?

3. Was the mental illness such as to render him substantially incapable of conforming his conduct to the requirements of the law he is charged with violating?

A negative finding as to the first question or negative findings as to both the second and third questions would require rejection of the insanity defense. An affirmative finding as to the first question, plus an affirmative finding as to either the second or the third question, would require a jury verdict of "not guilty" because of defendant's lack of criminal responsibility.

If in the judgment of the court the lay and psychiatric testimony provides no issue in relation to the second question, there is no need to submit it to the jury.

We emphasize that by approving the ALI standard and by setting forth the questions above we are not seeking to require judicial instructions in these specific words.

■ We have given careful thought to what effect our adoption of the ALI rule should have upon the instant case. We recognize, of course, that the District Judge had reason to rely upon the *Davis* charge, particularly since the explicit approval of change and development in this area of the law by the United States

8. We do not, however, adopt the following additional definition endorsed by the ALI: "As used in this Article, the terms 'mental disease or defect' do not include any abnormality manifested only by repeated criminal or otherwise anti-social conduct." MODEL PENAL CODE § 4.01(2) (Official Draft, 1962). The purpose of this definitional sentence was obviously to exclude from the definition of insanity "psychopathic personalities" who demonstrate mental abnormality principally by habitual violation of the law. The ALI commentators argue that to date mental health facilities in this nation offer little hope for curative treatment of these persons, and that mental health facilities are already overburdened by patients as to whom the prospects for successful treatment are considerably brighter. There is, however, great dispute over the psychiatric soundness of section 4.01 (2). See Overholser, Criminal Responsibility: A Psychiatrist's Viewpoint, 48 A.B.A.J. 527, 530 (1962); Diamond, From M'Naghten to Currens, and Beyond, 50 CALIF.L.REV. 189, 193–94 (1962).

Supreme Court (see footnote 8 supra) followed rather than preceded his action. We conclude, however, that when an overruling decision is made, it ordinarily should apply at least to the case at issue and similar cases then pending upon appeal. Any other general rule would tend to discourage the growth and development of case law. Since the psychiatric evidence in this record was such as to present an issue of fact for jury consideration under the test we have approved above, the omission of the ALI rule must be treated as reversible error and occasion remand of the instant case for retrial.

 In so doing we adopt the policy on retroactivity recently formulated by the Second Circuit in its well considered en banc decision on this problem. United States v. Tarrago, 398 F.2d 621 (2d Cir. 1968). The ALI test, or some reasonable approximation of it, will be employed in all future criminal trials where the insanity defense is tendered in this circuit. Retrial will be granted only as to those cases involving such defense which are now on appeal.

On retrial of this case if appellant's counsel again offers evidence pertaining to diagnosis of appellant as incompetent to stand trial, it should be received in evidence. Although the result of a competency hearing is not admissible at the trial (18 U.S.C. § 4244), evidence obtained in the course of that hearing is relevant and an important part of appellant's medical history. The statute relied on at this trial to bar such evidence was obviously drafted to bar admission of such evidence *against* the accused and the accused can waive its benefit. 18 U.S.C. § 4244 (1964); Bailey v. United States, 101 U.S.App.D.C. 236, 248 F.2d 558 (1957).

Appellant also contended that he was entitled to a directed verdict of acquittal because of the government's failure to offer any expert witness testimony. On retrial a different record may be developed, and we do not encourage reliance upon lay testimony to meet psychiatric evidence pertaining to mental illness. But a review of this trial record does not suggest re-examination of the established rule that lay testimony may, at least under some circumstances, serve to create an issue of fact for the jury as to a defendant's criminal responsibility. Mims v. United States, 375 F.2d 135 (5th Cir. 1967); Brock v. United States, 387 F.2d 254 (5th Cir. 1967); United States v. Cain, 298 F.2d 934 (7th Cir.), cert. denied, 370 U.S. 902, 82 S.Ct. 1250, 8 L.Ed.2d 400 (1962); Carpenter v. United States, 264 F.2d 565 (4th Cir.), cert. denied, 360 U.S. 936, 79 S.Ct. 1459, 3 L.Ed.2d 1548 (1959).

Reversed and remanded for new trial.