**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Andrew SMITH, Defendant-Appellant.**

**No. 20250.**

United States Court of Appeals,
Sixth Circuit.

Dec. 21, 1970.

**539**

Thomas F. Waldron, Cincinnati, Ohio, for defendant-appellant.

Simon L. Leis, Jr., First Asst. U. S. Atty., Cincinnati, Ohio, for plaintiff-appellee; William W. Milligan, U. S. Atty., Norbert A. Nadel, Asst. U. S. Atty., Cincinnati, Ohio, on brief.

Before CELEBREZZE and McCREE, Circuit Judges, and CECIL, Senior Circuit Judge.

McCREE, Circuit Judge.

In January 1969, Andrew Smith was charged in a complaint with violating the Mann Act, 18 U.S.C. § 2421, and upon arraignment, February 1, 1969, was released on $1,000 bond. On Febru-

ary 26, Smith failed to appear at a scheduled preliminary hearing in Cincinnati before the United States Commissioner, who revoked his bond. On March 19, he was arrested in Boston and, on March 26, was indicted for failing to appear before a federal officer, in violation of 18 U.S.C. § 3150. He was tried before a jury, convicted, and sentenced to three years' imprisonment. Shortly after his conviction under this indictment, the Mann Act charge was dismissed. Smith now appeals and asks this court to set aside his conviction.

Prior to the trial, in response to a suggestion by the United States Attorney, the District Judge ordered appellant to be examined pursuant to 18 U.S. C. § 4244 by Dr. Douglas Goldman, a psychiatrist, to determine his competency to stand trial. Dr. Goldman reported his findings in two letters to the District Judge, who found appellant competent. That determination is not challenged here.

Despite Dr. Goldman's previous participation in the proceedings, at trial the defense called him as an expert witness on the issue whether appellant was sane and possessed the capacity for criminal responsibility at the time he failed to appear. The prosecution called as rebuttal witnesses the United States Commissioner from Cincinnati before whom appellant had appeared four times prior to February 26, and the FBI agent who arrested appellant in Boston.

There are two questions before us. (1) Did Dr. Goldman's testimony present a prima facie defense of lack of criminal responsibility? (2) If so, did the Government present sufficient evidence to present a question of fact on this issue? We answer the first question in the affirmative and the second in the negative. Accordingly, we vacate the judgment of the District Court.

In United States v. Smith, 404 F.2d 720 (6th Cir.1968), this court established a new standard for determining whether a defendant was, at the time of

the alleged crime, capable of criminal responsibility.

The questions for jury consideration pertaining to criminal responsibility when defendant offers an insanity defense are as follows:

1. Was he suffering from a mental illness at the time of the commission of the crime?

2. Was that illness such as to prevent his knowing the wrongfulness of his act?

3. Was the mental ilness such as to render him substantially incapable of conforming his conduct to the requirements of the law he is charged with violating?

404 F.2d at 727. *See also* Mims v. United States, 375 F.2d 135 (5th Cir.1967). An examination of the transcript shows that Dr. Goldman gave unequivocal testimony, based on his interview with appellant, that would have supported a jury verdict of not guilty.

Q And again for the record, let me ask you these questions: Was the defendant Andrew Smith suffering from a mental illness on or about February 26th at the time of the commission of this crime?

A I believe that he was suffering from a mental aberration at that time.

Q Fine. Was that illness such as to prevent his knowing the wrongfulness of his act?

A This illness was such that the degree of his recognition of the wrongfulness was impaired. He probably couldn't understand that he was doing something that wasn't satisfactory, that wasn't acceptable, but he was unable to control his conduct to prevent his doing it.

Q Finally, Doctor, was the mental illness such as to render him substantially incapable of conforming his conduct to the requirements of the law he is charged with violating?

A Yes.

Transcript, at 109.

We are asked to disregard Dr. Goldman's testimony on the grounds that his examination of appellant had taken place six months before trial, had lasted no more than 90 minutes, and had been directed toward the question of competence to stand trial, not insanity at the time of the alleged offense. But the Government readily stipulated that Dr. Goldman was an expert, and we must assume that his years of training and experience as a psychiatrist enabled him to conduct a probing examination and to make informed judgments of the kind required here. We assume also that an expert can make such judgments on the basis of an interview which might be too brief to permit a layman to form a useful opinion.

Appellant attacks the Government's reliance on lay witnesses to refute Dr. Goldman's testimony. In *Smith* we said,

we do not encourage reliance upon lay testimony to meet psychiatric evidence pertaining to mental illness. But a review of this trial record does not suggest re-examination of the established rule that lay testimony may, at least under some circumstances, serve to create an issue of fact for the jury as to a defendant's criminal responsibility.

404 F.2d at 728.

The question, then, is whether the testimony of U.S. Commissioner Ebel and FBI Agent Welby, under the circumstances presented here, was of sufficient probative value to raise a question of fact. We hold that it was not.

Neither the Commissioner nor the FBI agent testified to more than appellant's superficial demeanor. Neither of these witnesses was shown to have been trained to make the kind of psychiatric evaluations necessary to answer intelligently the questions enumerated in *Smith*. Nor was there any evidence to indicate that either of these witnesses, in observing appellant, was concerned with his sanity or competence. Nothing in their testimony even remotely suggested a basis for making a judgment

whether appellant was able to conform his conduct to the requirements of the law. All we have is the testimony of two laymen that appellant, whom each observed no more than three or four hours several months before trial, did not seem particularly abnormal—or, as Agent Welby put it, no more abnormal than "any other person in a police station waiting for something to happen to them". Transcript, at 226. And, of course, the Commissioner only observed appellant in the courtroom as he awaited arraignment or the securing of continuances by counsel.

■ "The probative value of any opinion on the issue of insanity depends on the facts upon which it is based". Wright v. United States, 102 U.S.App. D.C. 36, 250 F.2d 4, 10 (1957). When a lay witness' direct knowledge of the defendant is brief and superficial and far removed in time from the commission of the crime or the trial, the testimony usually should not be admitted, and it should not defeat a motion for acquittal or for a new trial. Its virtual lack of probative value is heavily outweighed by possible prejudicial effect. *See, e.g.,* Brock v. United States, 387 F.2d 254 (5th Cir. 1967); Hartford v. United States, 362 F.2d 63 (9th Cir. 1966); Wright v. United States, *supra.* This is especially true when the purport of the testimony is simply that the defendant was not doing anything bizarre. "Also obvious upon a moment's reflection is the fact that, while a lay witness's observation of abnormal acts by an accused may be of great value as evidence, a statement that the witness never observed an abnormal act on the part of the accused is of value if, but only if, the witness had prolonged and intimate contact with the accused." Carter v. United States, 102 U.S.App.D.C. 227, 252 F.2d 608, 618 (1957).

Here the lay witnesses' contacts with defendant were anything but prolonged and intimate. Commissioner Ebel saw appellant only in the ritualized context of a preliminary hearing; Agent Welby listened to appellant's conversation during a ride to the police station. There is nothing to show that these witnesses had the capacity—as an expert might— to make valid psychological judgments on the basis of these relatively brief contacts. Accordingly, we hold that this evidence was insufficient to raise a factual issue and we reverse the judgment of conviction, and remand the case to the District Court.

■ We admit to some difficulty in determining our instructions to that court. Once a prima facie defense of insanity has been raised, the Government has the burden of proving beyond a reasonable doubt that the defendant was sane. Davis v. United States, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895). But the courts have divided on the proper remedy when it is held on appeal that the Government has failed to produce any evidence to counter the defense's prima facie case of insanity. Some courts have sent the case back for a new trial, Brock v. United States, 387 F.2d 254, 258 (5th Cir. 1967); Wright v. United States, 102 U.S.App.D.C. 36, 250 F.2d 4, 10 (1957), and the United States Supreme Court has held that such a disposition, which affords the prosecution a second opportunity, may be proper even though the Government has not presented a case in the first instance. Bryan v. United States, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335 (1950). Also, the reviewing court has on occasion directed the entry of a verdict of acquittal for reasons of insanity. Hartford v. United States, 362 F.2d 63, 67 (9th Cir. 1966). Still another course was suggested in *Bryan* by the concurrence of Mr. Justice Reed: sending the case to the District Court "to decide whether a judgment of acquittal should be entered or a new trial ordered". 338 U.S. at 560, 70 S.Ct. at 321. Presumably such a determination could be reviewed on appeal under a standard of abuse of discretion.

Here appellant made a motion for acquittal after the prosecution presented its rebuttal testimony on the sanity issue. By our holding we determine that

the District Court ought to have granted that motion. But that by itself is not determinative. *Bryan* teaches us that in a criminal case, though the Government has failed to present a prima facie case, it may have a second chance if the Court of Appeals determines that that course would be "just under the circumstances". 338 U.S. at 557, 70 S.Ct. 317, 28 U.S.C. § 2106. Accordingly, the apparently divergent rulings of the Courts of Appeals cited *supra* may be reconciled by the varying circumstances of the cases.

Our disposition of this appeal, then, is a matter of discretion: we must decide which course would better serve the ends of justice. This hinges, in our view, on whether the Government was unfairly prevented from producing competent evidence. The failure of the prosecution to present psychiatric testimony could have happened merely because of reliance upon the District Court's ruling that the evidence which was submitted was sufficient to raise a factual issue. Or it may have occurred because of the defense's failure to give the prosecution sufficient notice of its intention to proffer a defense of insanity.

From the record we cannot say with confidence whether the prosecution was prevented from presenting the strongest available evidence from the circumstances of the case. There is some dispute, for example, about whether the prosecution had notice of the defense appellant intended to raise. *See, e. g.,* Transcript, at 188–91. Appellant's counsel said during voir dire that he intended to call Dr. Goldman as a witness, but during his opening statement to the jury he said nothing about a defense based on lack of capacity for criminal responsibility. The District Judge indicated explicitly that he would allow the Government a ten-day adjournment within which to seek psychiatric testimony, Transcript, at 182, 186–87, but the defendant indicated through his attorney that he would not submit to a psychiatric examination conducted on behalf of the prosecution.

Under these circumstances, we do not believe that we can balance the equities as well as the District Judge, whose contact with the case has necessarily been more extensive and more intimate. Accordingly, we vacate the judgment of the District Court, and remand the case to that court, with directions to entertain motions for a new trial or for a directed verdict of acquittal by reason of insanity or any other motions which may be in order as the parties may offer.