**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Michael S. ATWELL,
Defendant-Appellant.**

**No. 77–5211.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 9, 1977.

Decided Feb. 17, 1978.

Shelby C. Kinkead, Jr., Federal Defender, William H. Fortune, Lexington, Ky., for defendant-appellant.

Patrick H. Molloy, U. S. Atty., James E. Arehart, Asst. U. S. Atty., Lexington, Ky., for plaintiff-appellee.

Before EDWARDS, KEITH and MERRITT, Circuit Judges.

EDWARDS, Circuit Judge.

Appellant appeals from his conviction on two counts involving possession of unregistered explosives and damaging a building used for interstate commerce by their use, in violation of federal law. 26 U.S.C. § 5861(d) (1970), and 18 U.S.C. § 844(i) (1970). The case was tried before a United States District Judge in the Eastern District of Kentucky with jury waived. Appellant was sentenced to two consecutive ten-year terms and sent to the Medical Center for Federal Prisoners at Springfield, Missouri, for observation and report under 18 U.S.C.A. § 4205(c) (Supp.1977). This court is advised that following receipt of the report, appellant's sentences were made to run concurrently for a total of ten years.[1]

1. This report was appended to the appellate record under seal. It has not been inspected by this court, since we do not consider it a part of the appellate record.

The circumstances of this case are macabre. The proofs clearly establish and appellant conceded that he had attempted to blow up the business premises of a former employer. The dynamite he used, attached to a timing device, exploded prematurely and he was seriously injured in the blast. His sole defense at trial and on appeal is that he was suffering from mental illness which deprived him of the capability of conforming his conduct to the law. *See United States v. Smith*, 404 F.2d 720 (6th Cir. 1968), and *United States v. Smith*, 437 F.2d 538 (6th Cir. 1970).

The lay and psychiatric evidence presented by this record is in direct conflict on this issue. A qualified psychiatrist, Dr. Paul Winkler, testified in vivid detail as to why his examination of appellant and the circumstances surrounding the crime convinced him that appellant was suffering from paranoid schizophrenia, which was a mental illness which deprived him of the capability of knowing right from wrong and conforming his conduct to the requirements of the law within the meaning of this Circuit's mental illness rules established in *United States v. Smith*, 404 F.2d 720, 727 (6th Cir. 1968).

Our review of Dr. Winkler's testimony convinces us that he has detailed a classic picture of schizophrenia.

On the other hand, another highly qualified psychiatrist, Dr. Charles D. Ottensmeyer, testified for the government that while appellant was mentally ill, his illness was properly defined as "inadequate personality" and that he did at the time of commission of the crime understand the wrongfulness of his act and did have the capability of conforming his conduct to the law.

The District Judge who heard this case recognized the existence of a mental problem and sent appellant to the Springfield Medical Center for study and report on his competence to stand trial. The hospital study and report indicated such competence and no appellate issue on this subject is involved in this appeal.

The District Judge also recognized at the completion of the trial that appellant had made out a prima facie case of mental illness which deprived him of the capability of conforming his conduct to the law and that the burden of proof in establishing appellant's mental responsibility shifted to the government. *See United States v. Smith*, 437 F.2d 538, 541 (6th Cir. 1970). Recognizing that burden on the prosecution, the District Judge nonetheless found that at the time of the crime appellant was mentally responsible beyond reasonable doubt. His findings and reasoning follow:

Gentlemen, I have considered the evidence in this case in its totality, the arguments of counsel, and have gone back and referred to the reporter's transcript of certain testimony that I wanted to look at in order to refresh my recollection in regard to certain testimony given, and the Court finds that the undisputed evidence herein discloses that the defendant committed the acts charged in Count 1 and Count 2 of the Indictment, and that the sole defense is that of insanity at the time of the commission of the offenses. The only categorical evidence which supports this position is that of Dr. Winkler, and under the legal criteria applicable to such cases, this testimony, if taken at face value, is sufficient to create a prima facie case of insanity. However, the Court is of the opinion that this defense has been successfully refuted by the United States by the testimony of Dr. Ottensmeyer, by the supporting testimony of the psychologists, Dr. Varhely and Dr. Marx, the lay witnesses, Lt. Wade and Detective Vogel, and by the physical facts, specifically, the dynamite, 95 sticks more or less, and 300 blasting caps were stolen between midnight on Wednesday and 2:00 A.M. before the bombing on Saturday, July 10th. The timer was tested by the defendant's sister-in-law at his request by the use of a lamp on Saturday night, apparently, before the bombing—on Friday night, apparently, before the bombing, or Saturday.

One of the blasting caps was tested a day or two before the explosion, according to statements made by the defendant, and a spent cap was found in the trunk of his car. The defendant bought a number of items, including two other timers, wires, extension cords, and other materials, on the night before the bombing, apparently, on Friday, July 9th, as I recall the testimony.

The defendant has an I.Q. of 147, and Dr. Marx testified that he had a highly developed sense of conscience, which would make it less difficult for him to differentiate between right and wrong, and more difficult not to adhere to the right, that is, the requirements of the law.

The defendant was, apparently, associated with persons of ill repute, including known gamblers, bragging as to the amount of money which he was making gambling, and stated that on one occasion he had collected a debt for one of his associates, a known gambler, the nature of the debt not being disclosed.

All of the surrounding circumstances leading up to the offense point to the guilt of the defendant, including the statements made by the defendant on the morning of July 10th, within a few moments after the explosion, when his first remark, apparently, was "Was anyone hurt?" Several days later in the intensive care room at the hospital and speaking with Detective Vogel, he inquired: "What went wrong?"

The Court concludes from all of these matters and finds that the defendant suffered from an inadequate personality, as described by Dr. Ottensmeyer, but that that was the nature of the mental illness, and that such illness did not prevent him from knowing the wrongfulness of his act, nor did it render him substantially incapable of conforming his conduct to the requirements of the law he is charged with violating.

The Court, therefore, finds, that the defendant was not insane at the time of the commission of the offenses charged in Count 1 and Count 2 of the Indictment, and, accordingly, finds him guilty of said charges.

■ Where a case is tried before a District Judge on jury waiver, our standard of appellate review is whether or not the District Judge's findings of fact are "clearly erroneous," *Maxwell v. United States*, 277 F.2d 481, 510 (6th Cir. 1960), *see also Jackson v. United States*, 122 U.S.App.D.C. 324, 353 F.2d 862, 864–65 (1965), and, of course, (as in jury trials) whether or not there were facts from which legal sanity, and guilt beyond reasonable doubt could be found. *In re Winship*, 397 U.S. 358, 362–63, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Davis v. United States*, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895).

■ While we are much impressed with the expertise and sincerity of the testimony of Dr. Winkler, we cannot overlook or disregard the qualifications and experience of Dr. Ottensmeyer. On the total record, including the testimony of all expert and lay witnesses, we cannot say that the District Judge's findings of fact are "clearly erroneous" or that there were no proofs from which the District Judge could have found appellant both legally sane and guilty beyond reasonable doubt.

The judgment of the District Court is affirmed.