831 F.2d 298
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Howard STEWART, Defendant-Appellant.
 No. 87-3809
 United States Court of Appeals, Sixth Circuit.
 October 5, 1987.
 
 Before Ralph B. GUY, Jr. and BOGGS, Circuit Judges, and SUHRHEINRICH, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant Stewart appeals his jury conviction for bank robbery. At trial Stewart relied on a defense of not guilty by reason of insanity. Stewart argues on appeal that the finding of the jury that he was sane is not supported by the weight of the evidence. Stewart also argues ineffective assistance of counsel predicated on an alleged failure of his attorney to call certain witnesses as well as on the basis of a remark made by his counsel during her opening statements.
 
 
 2
 Upon review of the record, we conclude that there was an adequate evidentiary basis to support the jury's conclusion that defendant was sane beyond a reasonable doubt. We also find that appointed counsel provided effective assistance before and during the trial. Accordingly, we affirm.
 
 I.
 
 3
 On March 22, 1984, Bank One in Dayton, Ohio, was robbed by a lone male. Surveillance cameras within the bank recorded the robbery on film and at least two bank employees got a good look at the robber.
 
 
 4
 On October 16, 1984, defendant Stewart was indicted for the robbery (18 U.S.C. Sec. 2113(a)) and also for escape (18 U.S.C. Sec. 751. The escape count was later severed and Stewart was tried on the bank robbery charge on April 14, 15, and 16, 1986. On April 17, 1986, a jury returned a verdict of guilty.
 
 
 5
 Shortly after indictment, Stewart through his appointed counsel, filed a motion seeking a determination as to his competency to stand trial. He was found incompetent and was committed to the United States Medical Center in Springfield, Missouri, for evaluation. Upon the conclusion of this evaluation, on April 19, 1985, Stewart appeared in court with counsel for a hearing at which time the court determined that Stewart was competent to stand trial. At this April hearing, Stewart advised the court that he wanted a different attorney. After a thorough discussion of this request, the court concluded there were no grounds for substitution of counsel. Counsel then notified the court that she would be entering a plea of not guilty by reason of insanity on behalf of the defendant.
 
 
 6
 On April 24, 1985, counsel, Ms. Wald, filed a motion for appointment of a psychiatrist, a motion for appointment of a psychologist expert on the issue of eyewitness accuracy, a motion to suppress evidence of identification, a motion for discovery, a notice of intent to rely on the defense of insanity, a motion for severance of counts, a notice of intent to introduce expert testimony, and a motion requesting transcripts of the preliminary examination. Thereafter on May 6, 1985, counsel filed a motion for appointment of a specific psychologist and a motion to compel discovery. Finally, on May 22, 1985, counsel filed a motion authorizing the appointed psychiatrist, Jerome Logan, M.D., to examine Stewart.
 
 
 7
 On February 25, 1986, prior to a hearing upon Stewart's motion to suppress identification, defense counsel advised the court that Stewart again requested a different lawyer. The court questioned counsel, who stated that she felt she could continue to work with Stewart and provide a proper defense. The district judge observed that Ms. Wald appeared interested in Stewart's defense, had worked hard, and that the court did not see how another attorney could do a better job than she had. Accordingly, the request for a different attorney was denied. Subsequently, counsel filed additional appropriate motions on defendant's behalf.
 
 
 8
 In early April of 1986, the court received a letter from Stewart in which he again asked for a different attorney. On April 11, 1986, the court held a lengthy hearing and determined that Stewart's complaint centered around what witnesses should be called and the offering of an alibi defense. Judge Rice patiently and thoroughly explored these complaints both on the record and in chambers where the defense strategy could be discussed without tipping off the prosecution. Ms. Wald explained to the court that Stewart had just recently asked for an alibi defense after the time in which notice of such a defense must be given. More significantly, however, Stewart did not really have an alibi but merely stated he did not know where he was on the day of the robbery.
 
 
 9
 As to the witnesses, Ms. Wald explained that they were either not locatable, had never been mentioned before by Stewart, or were poor choices as witnesses due to non-corroborating versions of what occurred or because they had criminal records which would make them easily impeachable. Insofar as certain additional medical witnesses were concerned, the court correctly concluded their testimony would be either inadmissible or irrelevant. Notwithstanding that Judge Rice concluded that defense counsel's strategy was superior to what defendant wanted and that counsel was vigorously pursuing a defense for Stewart, he nonetheless requested that she talk to the other witnesses mentioned by defendant.
 
 
 10
 On April 14, 1986, prior to commencement of the trial, the district judge asked counsel in the conference room if she had contacted the witnesses mentioned by Stewart. Ms. Wald indicated she had and gave the court a detailed report.
 
 
 11
 After voir dire and selection of the jury on April 14, 1986, the court asked Ms. Wald if she had discussed with Stewart what she had previously told the court regarding contacting the witnesses. Ms. Wald stated that she had discussed with Stewart whether to call the witnesses, and that Stewart agreed that those witnesses should not be called. Then, in response to questions by the district judge, Stewart stated that he agreed with Ms. Wald.
 
 
 12
 Before addressing Stewart's ineffective assistance of counsel claim, we should note that as a general rule, a defendant may not raise such claims for the first time on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations. United States v. Hill, 688 F.2d 18, 21 (6th Cir.), cert. denied, 459 U.S. 1074 (1982). The customary procedure followed in this situation by the various circuits is to permit the defendant to raise his ineffectiveness of counsel claim in a proper post-conviction proceeding under 28 U.S.C. Sec. 2255. When, however, the record is adequate to assess the merits of the defendant's allegations, the claim may be considered. United States v. Hilliard, 752 F.2d 578, (11th Cir. 1985). Stewart's claims here do not depend on matters outside the record, and his concerns were raised before the district court. Accordingly, we are able to evaluate properly his sixth amendment claim.
 
 
 13
 In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court set forth the two-pronged test by which ineffective assistance of counsel claims should be reviewed:
 
 
 14
 A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
 
 
 15
 Id. at 687.
 
 
 16
 Relative to the performance prong, Strickland also teaches:
 
 
 17
 In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ('The Defense Function'), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. See United States v. Decoster, 199 U.S. App. D.C., at 371, 624, F.2d, at 208. Indeed, the existence of detailed guidelines for representation could distract counsel from the overriding mission of vigorous advocacy of the defendant's cause. Moreover, the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial.
 
 
 18
 466 U.S. at 688-689.
 
 
 19
 When this standard is applied to the facts concerning counsel's representation as developed by the trial court, it appears clear that the performance of counsel was vigorous, professional and effective by any conceivable standard short of requiring that performance result in an acquittal.
 
 
 20
 Furthermore, no claim of prejudice could stand scrutiny in a case where the evidence was as strong against the defendant as it was here. Two bank employees made a positive identification, Stewart's niece identified him as the person shown in the bank surveillance films, and a number of other witnesses including close friends and family describe Stewart's activities on the day of the robbery in a manner that leaves no doubt as to his involvement. A claim of prejudice could simply not be constructed based on this record.
 
 
 21
 Similarly, we find no merit to Stewart's other complaint as to his counsel's performance. During opening statements Ms. Wald stated:
 
 
 22
 The evidence will show that the only person in the bank who correctly--who--excuse me--who picked out Mr. Stewart at the lineup as being the robber, that this person was at all times during the robbery a distance of at least five teller windows away from the teller window where the robbery took place. She saw the robber as he walked towards her and behind her on his way out of the bank.
 
 
 23
 App. 109 (emphasis added).
 
 
 24
 This one slight slip of the tongue must be viewed in the context of the entire opening statement during which counsel also stated:
 
 
 25
 The evidence will show that the robbery occurred on March 22, 1984. The lineup did not occur until October 3, 1984, more than six months later. Each eyewitness had only seen the robber for a matter of seconds, each of them less than a minute.
 
 
 26
 App 109.
 
 
 27
 As has been often stated, a criminal defendant is guaranteed a fair trial--not a perfect one. We find no error here in counsel's one small slip which would require reversal.
 
 II.
 
 28
 In reviewing a claim of insufficient evidence, our starting point is that we must view the evidence and all reasonable inferences in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 80 (1942). In Burks v. United States, 437 U.S. 1, 17 (1978), the Supreme Court indicated that appellate reversals on grounds of insufficient evidence should be confined to 'cases where the prosecution's failure is clear.' Of even more significance to this case is that the Court in Burks also stated: 'When the basic issue before the appellate court concerns the sufficiency of the Government's proof of a defendant's sanity . . . a reviewing court should be most wary of disturbing the jury verdict . . ..' Id. at 17 n.11.
 
 
 29
 When an insanity defense is involved, this circuit still adheres to the test enunciated in United States v. Smith, 404 F.2d 720, 727 (1968):
 
 
 30
 The questions for jury consideration pertaining to criminal responsibility when defendant offers an insanity defense are as follows:
 
 
 31
 1. Was he suffering from a mental illness at the time of the commission of the crime?
 
 
 32
 2. Was the illness such as to prevent his knowing the wrongfulness of his act?
 
 
 33
 3. Was the mental illness such as to render him substantially incapable of conforming his conduct to the requirements of the law he is charged with violating?
 
 
 34
 A negative finding as to the first question or negative findings as to both the second and third questions would require rejection of the insanity defense. An affirmative finding as to the first question, plus an affirmative finding as to either the second or the third question, would require a jury verdict of 'not guilty' because of defendant's lack of criminal responsibility.
 
 
 35
 Id.
 
 
 36
 When defendant's sanity is properly put in issue as was done here, the prosecution must prove beyond a reasonable doubt that the defendant was sane at the time he committed the acts in question. United States v. Wilson, 629 F.2d 439, 441 (6th Cir. 1960).
 
 
 37
 On the question of his sanity at the time the bank was robbed, Stewart offered an expert witness. The government countered with its own expert. Without recounting their testimony, it is fair to say that the government expert positively stated that it was his opinion that Stewart was not suffering from a mental illness at the time of the robbery. Thus, the first prong of the Smith test would not have been met. Stewart's expert, on the other hand, equivocated. Dr. Logan stated that Stewart was suffering from a mixed personality disorder with anti-social and borderline features (App. 163). Although he did not specifically say so, a fair reading of his testimony would indicate that he felt that that condition constituted a mental illness. On cross-examination, however, Dr. Logan admitted that psychiatrists generally agree that a personality disorder is not a mental illness (App. 167). Dr. Logan also indicated he saw no signs of psychosis at the time he examined the defendant (App. 171). Finally, Dr. Logan admitted that he could not state with reasonable medical certainty that the defendant had a mental illness on March 22, 1984 (App. 173).
 
 
 38
 Given the limited nature of our review of the jury's determination of the sanity issue, it is clear that the records contain sufficient evidence to support the verdict.
 
 
 39
 AFFIRMED.
 
 
 
 *
 Honorable Richard F. Suhrheinrich, United States District Court, Eastern District of Michigan, sitting by designation