**Norman Lee HAMILTON, Defendant-Appellant,**

v.

**UNITED STATES of America, Plaintiff-Appellee.**

**No. 72–1501.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 6, 1973.

Decided March 29, 1973.

Rollie L. Woodall (Court Appointed), Nashville, Tenn., on brief for appellant.

Joe B. Brown, Asst. U. S. Atty., for appellee; Charles H. Anderson, U. S. Atty., M. D. Tennessee, Nashville, Tenn., on brief.

Before PHILLIPS, Chief Judge, LIVELY, Circuit Judge, and YOUNG,* District Judge.

LIVELY, Circuit Judge.

The appellant robbed a branch of First American National Bank in Nashville, Tennessee shortly after noon on September 16, 1971. An off-duty policeman who was in the bank on personal business arrested appellant as he was getting into a taxi cab in front of the bank immediately after the robbery. Although appellant had told the teller from whom he took $744 that he had a gun in his pocket, when arrested he was unarmed and did not resist. While being searched for a gun appellant told the arresting officer that the money was in his pocket and indicated which pocket. The money was recovered and appellant was taken

---

* The Honorable Don J. Young, District Judge of the United States District Court for the Northern District of Ohio, sitting by designation.

to a room in the back of the bank and held until an FBI agent could be summoned. After explaining his rights and obtaining a written waiver from appellant, the agent took a statement which appellant signed. In this statement the robbery was admitted and the reason given was that appellant needed money.

The teller who was robbed stated that she thought that appellant might be drunk because he asked her name when it was in plain view on her cage and furthermore he had no deposit slip or check in his hand when he approached her. However, she testified that appellant had no odor of alcohol about him and did not stagger. Neither the patrolman who made the arrest nor the FBI agent who took the statement thought that appellant was intoxicated, though both agreed that he showed signs of stress. In his statement to the FBI agent the appellant said that he had had six or eight beers during the morning while he was in a bar some two miles away and it was there that he had devised the plan of robbing this particular bank. The taxi driver who took appellant from the hotel to the bank stated that he might have been drinking but that he was not drunk. Appellant rode in the front seat next to the driver.

Witnesses for the government and appellant agreed that he was a chronic alcoholic and that his problem had existed for about 25 years. A psychiatric social worker from Central State Hospital testified that Mr. Hamilton had been a patient at that hospital on four occasions and that she was familiar with his case. She testified that he was a chronic alcoholic and that he had been released from the hospital on August 30 and placed in a Salvation Army rehabilitation center. However, appellant called her the night before the robbery and told her that he was drinking again and asked to be readmitted to the hospital. There was no space available at the time and the social worker told him that she would place him as soon as possible. This witness testified that Hamilton was impulsive, particularly under the influence

of alcohol and would do things on the spur of the moment. She testified further that he was impaired in terms of picking out a goal and being able to obtain that goal. Appellant testified that his primary purpose in robbing the bank was to get caught and get some help.

A staff psychiatrist from the Medical Center for Federal Prisoners at Springfield, Missouri, testified that he conducted both a medical examination and psychiatric evaluation on appellant one month after the robbery. While he noted signs of chronic alcoholism, this witness testified that in his opinion appellant was competent at the time he committed the robbery. He did not believe that the evidence indicated that Hamilton was intoxicated at the time of the robbery and it was his opinion that his cerebral abilities were not so impaired by alcohol as to keep him from forming a goal-directed action and carrying it out. The witness did not believe that appellant was suffering from chronic brain syndrome or that he was so intoxicated at the time of the robbery as to indicate that he did not know what he was doing or was unable to resist an impulse to carry out his scheme.

■ In a trial by jury appellant was convicted of unarmed robbery of an insured bank. A number of grounds are urged for reversal. Appellant questions the sufficiency of the evidence on the question of whether the bank was insured by the Federal Deposit Insurance Corporation. The prosecution introduced a 1969 certificate from the F.D.I.C., and the manager of the branch where the robbery took place, who was also an assistant vice president of the banking corporation, testified that the bank which was robbed was insured. This was sufficient to establish jurisdiction of the District Court. United States v. Riley, 435 F.2d 725 (6th Cir. 1970).

■ Appellant's motion to suppress the statement he gave the FBI agent was overruled after a hearing. On appeal he contends the government failed to prove that he was competent to waive

his constitutional rights and give an incriminating statement. In a similar vein he maintains that his motion for acquittal should have been granted because the prosecution failed to prove that he was responsible for his conduct during the commission of the offense. No witness who observed appellant immediately after the robbery occurred thought that he was drunk. This included a policeman, an FBI agent and a taxi driver, all of whom have had ample opportunities to observe intoxicated people. Furthermore, the FBI agent described appellant's actions and appearance and concluded that he appeared normal under the circumstances. The evidence fully supports the finding of the trial judge that appellant gave the incriminating statement voluntarily. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed. 2d 908 (1964); 18 U.S.C. § 3501.

■ In support of his argument that he was entitled to a directed verdict of acquittal appellant relies upon United States v. Smith, 437 F.2d 538 (6th Cir. 1970). There we held that the prosecution must prove sanity of a criminal defendant beyond a reasonable doubt once a prima facie case of insanity has been established. In *Smith* the government relied on lay witnesses to rebut the evidence of insanity. That was not the case here. Dr. Rochman, staff psychiatrist from the Medical Center for Federal Prisoners, testified unequivocally that in his opinion appellant was competent at the time he robbed the bank. The trial court properly overruled the motion and submitted this issue to the jury.

■ ■ Appellant offered a proposed instruction on "irresistible impulse," using language from Pollard v. United States, 282 F.2d 450 (6th Cir. 1960). In *Pollard*, Chief Judge McAllister (now Senior Judge) wrote an exhaustive and scholarly opinion on the subject of the defense of irresistible impulse. It was pointed out that the irresistible impulse which constitutes a legal defense differs from uncontrollable desire and "emotional insanity." The difference is that to constitute a defense to a criminal charge, the impulse must arise from a mental defect or mental disease. 282 F.2d at 462. In refusing to give the requested instruction the trial judge stated that the appellant could argue the theory of irresistible impulse to the jury, but that he felt it was included in his proposed charge to the jury and should not be singled out for special comment.

The court then instructed the jury on the defense of insanity using the three questions set forth in United States v. Smith, 404 F.2d 720, 727 (6th Cir. 1968). In addition, the jury was told that if it had a reasonable doubt as to whether, by reason of intoxication, the defendant was able to form a specific intent to commit the crime charged, it should find him not guilty. These instructions fully presented the defenses of insanity and intoxication. In United States v. Smith, *supra*, this court substantially adopted the test of criminal responsibility formulated by the American Law Institute in its Model Penal Code. While recognizing that Pollard v. United States, *supra*, added a major new dimension to the insanity test to be applied by the courts of this circuit, the court pointed out the serious deficiencies of the traditional irresistible impulse definition. By requiring the acquittal of a defendant suffering from a mental illness which renders him substantially incapable of conforming his conduct to the requirements of the law he is charged with violating, the ALI test has preserved the essential elements of "irresistible impulse" without these limitations. The general test encompasses insanity in its various manifestations, and therefore, no additional instruction on a particular theory or classification is required.

The judgment of the District Court is affirmed.