UNITED STATES of America, Appellee,

v.

William Reece JOHNSTON, Appellant.

No. 76–1309.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 17, 1976.

Decided Oct. 20, 1976.

Frank W. Booth, Fort Smith, Ark., for appellant.

Robert E. Johnson, U. S. Atty. and J. Michael Fitzhugh, Asst. U. S. Atty., Fort Smith, Ark., for appellee.

Before GIBSON, Chief Judge, STEPHENSON and HENLEY, Circuit Judges.

GIBSON, Chief Judge.

William Johnston appeals his conviction in a jury trial of attempted bank robbery in violation of 18 U.S.C. § 2113(a) (1970).

On January 14, 1976, Johnston, a paroled bank robber, attempted to rob the First National Bank of Fort Smith, Arkansas. Keeping his right hand in his right coat pocket in such a way as to make it appear that he had a gun, Johnston forced his way into the package vault area of the bank, ordered employees not to push any buzzers and demanded $20 bills. A bank employee who described himself as "adept in the art of self defense" jumped Johnston from the rear and overpowered him. Johnston was held by bank employees until law enforcement officials arrived and took him into custody. A search of Johnston by the arresting officers, members of the Fort Smith Police Department, uncovered a pocketknife in his right coat pocket. Johnston

was subsequently indicted for violation of 18 U.S.C. § 2113(a) and was found guilty by a jury in United States District Court[1] of having attempted to rob the First National Bank of Fort Smith, Arkansas. He appeals. We affirm.

Johnston's initial contention is that he was voluntarily intoxicated at the time of the attempted robbery and that the Government improperly suppressed the results of a breathalizer test administered by the Fort Smith police after his arrest. Johnston asserts that evidence of his voluntary intoxication was admissible to negate his formation of the specific intent necessary to commit the offense with which he was charged.

*Suppression*

█ In a motion for discovery Johnston requested "all reports of physical examinations, scientific tests, etc." The Government did not provide Johnston with the results of the breathalizer test, which had been lost while in the custody of the Fort Smith Police Department. There is no support in the record for Johnston's insinuations that the federal government was responsible for this loss. At a hearing on pretrial motions on March 8, 1976, the Government did provide Johnston with the name of the officer who administered the breathalizer test and Johnston used him as a witness at trial.

Johnston contends that the trial court erred in failing to order the Government to comply with his request for the results of the breathalizer test and that the appropriate cure is a dismissal of the indictment. Putting aside the question of whether evidence of voluntary intoxication was relevant on the issues urged by Johnston, we deem that the record does not support the conclusion that the Government suppressed the results of the breathalizer test. The Government cannot be held to have suppressed *Brady* material, *see Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), where the material sought was unavailable to either the Government or the defendant because of its loss by state police officials. Moreover, the Government apprised the defendant of the name of the officer administering the test, which placed Johnston in a position of parity with the Government as far as access to this material was concerned. Johnston, as a result, chose to call that officer as a witness at trial and he testified that the test, administered approximately 30 minutes after Johnston's arrest, had shown a result of .20% intoxication, which he considered midway between slightly and very intoxicated. Accordingly, it was not error for the trial court to fail to enter an order directing the Government to provide Johnston with the results of the test, which it did not possess and to which Johnston had equal, indirect access through the testimony of the administering officer.

*Specific Intent*

█ The most serious contention raised by Johnston involves the issue of specific intent. It is the general and undisputed rule that evidence of voluntary intoxication may not be used to negate general criminal intent, but that where specific intent is an element of the offense charged, voluntary intoxication may be used to prove lack of intent. Johnston argues that specific intent is an element of the offense with which he was charged and that his state of intoxication prevented him from forming the requisite specific intent. Johnston cites as error the trial court's refusal to give his proffered instruction stating that specific intent was an element of the offense charged. To the contrary, the trial court instructed the jury that specific intent was not an element of the offense defendant was charged with and that, accordingly, evidence of voluntary intoxication could not be considered to demonstrate lack of capacity to form specific intent.

█ 18 U.S.C. § 2113(a) contains two alternative definitions of criminal activity:

---

1. The Honorable Paul X Williams, Chief Judge, United States District Court for the Western District of Arkansas.

Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money * * * of any bank * * * ; or

Whoever enters or attempts to enter any bank * * * with intent to commit in such bank * * * any felony affecting such bank * * * and in violation of any statute of the United States or any larceny—

Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

Johnston was charged with a violation of the first paragraph of § 2113(a), which, unlike the second paragraph, does not include "intent to commit * * * any felony" as an element of the offense. Johnston's claim that specific intent is involved here is based not on citation to any binding or persuasive authority to that effect, but rather on the theory that because the offense here was an attempted rather than completed robbery, the usual principles of criminal intent should not apply.

This novel theory is offered without further explanation and is lacking in merit. We can find no authority compelling the conclusion that the first paragraph of § 2113(a) requires specific intent as an element of the offense. The scattered cases that have held specific intent to be an element of a violation of § 2113(a) are unpersuasive in that they fail to distinguish between the alternative paragraphs of § 2113(a), which differ crucially on the question of intent, and also fail to identify the paragraph under which the defendant in question was charged. *See Hamilton v. United States,* 475 F.2d 512 (6th Cir. 1973); *Nagell v. United States,* 392 F.2d 934 (5th Cir. 1968); *Caples v. United States,* 391 F.2d 1018, 1022–23 (5th Cir. 1968). In those cases where courts have distinguished the first and second paragraphs of § 2113(a) in terms of intent, it has been held that specific intent is not an element of an offense under the first paragraph, which is the paragraph at issue in the present case.

*United States v. Hartfield,* 513 F.2d 254, 259 (9th Cir. 1975); *United States v. Porter,* 431 F.2d 7 (9th Cir.), *cert. denied,* 400 U.S. 960, 91 S.Ct. 360, 27 L.Ed.2d 269 (1970); *United States v. DeLeo,* 422 F.2d 487 (1st Cir.), *cert. denied,* 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970).

A simple comparison of the language in the two paragraphs of § 2113(a) convinces us that Congress chose to define the second paragraph in terms of specific intent and consciously did not include language of specific intent in the first paragraph. Johnston has neither cited, nor can we find, binding authority requiring a contrary interpretation of the first paragraph of § 2113(a). We conclude that the trial court was correct in refusing to instruct the jury that specific intent was an element of the offense charged. There was no error in the instruction that specific intent was not an element of the offense charged and that voluntary intoxication was not, accordingly, a defense to the formation of the requisite intent. A review of the particular instruction on intent and the instructions as a whole convinces us that the jury was properly instructed on the elements of the crime, including intent.

Johnston raises numerous additional contentions, including allegations that every ruling of the trial court on his motions and objections was error and that the whole general criminal process used in our system is inherently unfair and violative of due process. We select only a few of these additional contentions for specific consideration.

■■■ Johnston contends that the indictment should have been dismissed because it is impossible to rob a bank with a concealed pocketknife while intoxicated. The relevance of Johnston's intoxication has already been discussed. Johnston was in fact not convicted of completed, but of attempted, bank robbery. Legal impossibility may be established only where a defendant's actions, if fully performed, would not constitute a crime. The full performance of Johnston's acts, a taking of $20 bills from a bank, would have constituted a crime. Fur-

thermore, factual impossibility can serve as a defense only where circumstances unknown to the actor prevent his commission of an offense. No such facts have been demonstrated here. That Johnston used a concealed pocketknife does not render the attempted robbery factually impossible. The victims had reason to believe the object in Johnston's pocket was a gun and were, therefore, intimidated. This intimidation satisfied paragraph one of § 2113(a) and accordingly any defense of factual impossibility is unavailing.

■■■ Johnston moved prior to trial for a ruling on the admissibility of his prior convictions for impeachment purposes. He characterizes as error the trial court's refusal to make such a pretrial ruling in that it detrimentally affected the preparation of his case and caused him to decide not to take the stand. Pursuant to Fed.R.Ev. 609(b), the Government gave Johnston advance written notice of its intent to use evidence of prior convictions and Johnston was not entitled to an advance order barring impeachment use of these prior convictions in the event he took the stand. One who takes the stand in his own defense may be cross-examined relative to prior convictions, *United States v. Scarpellino,* 431 F.2d 475, 478–79 (8th Cir. 1970), and is not entitled to a protective pretrial order prohibiting cross-examination of this nature. *United States v. Merrill,* 484 F.2d 168, 171 (8th Cir.), *cert. denied,* 414 U.S. 1077, 94 S.Ct. 594, 38 L.Ed.2d 484 (1973). Moreover, until Johnston took the stand, which he chose not to do, the court had no duty to rule on his pretrial motion regarding the admissibility of evidence of his prior convictions for purposes of impeachment.

We have carefully examined the remainder of Johnston's numerous contentions and find them lacking in merit. Accordingly, we affirm.

Affirmed.