**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Jerry Eugene GONYEA, Defendant–
Appellant.**

No. 96–2267.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 4, 1997.

Decided April 2, 1998.

Kenneth R. Chadwell (argued and briefed), Office of the U.S. Attorney, Detroit, MI, for Plaintiff–Appellee.

Thomas V. Wilhelm (argued and briefed), Bloomfield Hills, MI, for Defendant–Appellant.

Before WELLFORD, NORRIS, and SILER, Circuit Judges.

## OPINION

ALAN E. NORRIS, Circuit Judge.

Defendant Jerry Gonyea appeals his convictions for bank robbery. Before trial, the district court ruled that he could not assert the defense of diminished capacity. Because we conclude that he was charged under a general intent criminal statute, and diminished capacity is not a defense to general intent crimes, we agree with the district court and affirm defendant's convictions.

## FACTS

On October 12, 1994, the grand jury returned a superseding indictment against defendant, charging him with, *inter alia,* two counts of bank robbery in violation of the first paragraph of 18 U.S.C. § 2113(a).[1] Defendant and an accomplice, first on February 18, 1994, and then again on March 16 of that same year, robbed the Comerica Bank in Taylor, Michigan. During each robbery, both defendant and his accomplice were brandishing firearms.

Prior to trial, defendant advised the district court of his intention to assert the defense of diminished capacity.[2] Specifically, he intended to introduce the testimony of a licensed psychologist who specializes in forensic-clinical psychology. In his report compiled after examining defendant, the psychologist concluded that

there is clinical evidence of several factors that would have worked together to constrain defendant's capacity to resist involving himself in this particular series of bank robberies. The defendant felt compelled to continue to act on his obsessive goal of robbing the bank. Whereas he likely had the cognitive capacity to plan the crimes for which he is charged, in my opinion, he had a markedly diminished ability to resist the power of this particular activity due to the unconscious control over his anxiety that this unconscious fantasy and activity afforded him.

Being advised of defendant's intentions, the government filed a pretrial motion asking the court to preclude defendant from offering any psychological testimony. The district court granted the government's motion on the ground that the first paragraph of § 2113(a) spells out a general intent crime and diminished capacity is not a defense to such a crime. Furthermore, the court informed the parties that it would not instruct the jury on the diminished capacity defense. Defendant then entered into a plea agreement pursuant to Federal Rule of Criminal Procedure 11, under which he agreed to plead guilty, but reserved the right to appeal the court's preclusion of his diminished capacity defense.

## ANALYSIS

■ In the federal courts, diminished capacity may be used only to negate the mens rea of a specific intent crime.[3] *United States v. Fazzini,* 871 F.2d 635, 641 (7th Cir.1989); *United States v. Twine,* 853 F.2d 676, 679 (9th Cir.1988). For this reason, we must

---

1. The first paragraph of § 2113(a) provides:
   Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association ... [s]hall be fined under this title or imprisoned not more than twenty years, or both.
   18 U.S.C. § 2113(a).

2. Although the diminished capacity defense lacks a universally accepted definition, *see United States v. Pohlot,* 827 F.2d 889, 903–04 (3d Cir. 1987), it is usually offered to negate the mens rea element.

3. We have previously held that the diminished capacity defense remains viable even after the enactment of the Insanity Defense Reform Act of 1984, 18 U.S.C. § 17. *United States v. Newman,* 889 F.2d 88, 91 (6th Cir.1989).

decide whether bank robbery is a specific intent crime.

## I.

■ Whether bank robbery is a general or specific intent crime is an issue of first impression in the Sixth Circuit. Nevertheless, some practitioners and other courts have interpreted a series of our opinions—those in *Pollard v. United States*, 282 F.2d 450 (6th Cir.1960),*Hamilton v. United States*, 475 F.2d 512 (6th Cir.1973), and *United States v. Campbell*, 675 F.2d 815 (6th Cir.1982) (Martin, J., concurring and dissenting)—to mean that this circuit has already resolved the issue. *See, e.g., United States v. Peralta*, 930 F.Supp. 1523, 1527 (S.D.Fla.1996). In view of the apparent confusion that exists concerning our prior case law, we deem it necessary to parse those opinions in some detail.

In *Pollard*, the defendant was charged with attempting to rob three banks and a grocery store. During his bench trial before the district court, the defendant presented evidence that he acted under an irresistible impulse [4] and asked the court to find him not guilty by reason of insanity based upon that ground. The district court applied the *M'Naghten* test for insanity,[5] but not the irresistible impulse test, and found the defendant guilty. *Pollard*, 282 F.2d at 462. This court set aside the verdict, holding that irresistible impulse is an accepted means of establishing the insanity defense, and that the government failed to sustain its burden of proving that the defendant did not act under an irresistible impulse.[6] *Id.* at 464.

■ The insanity defense, of which irresistible impulse is one prong, "is not concerned with the mens rea element of the crime; rather, it operates to completely excuse the defendant whether or not guilt can be proven." *United States v. Twine*, 853 F.2d 676, 678 (9th Cir.1988). For this reason, insanity is a defense to all crimes, regardless of whether they require general or specific intent. By contrast, the diminished capacity defense, which defendant sought to assert, is not an excuse. Rather, it "is directly concerned with whether the defendant possessed the ability to attain the culpable state of mind which defines the crime." *Id.* (citation omitted). Since diminished capacity is a defense only to specific intent crimes, and *Pollard* concerns the use of the insanity defense, a defense to all crimes, that case provides no guidance with regard to whether the specific intent defense of diminished capacity may be asserted as a defense to bank robbery.

In *Hamilton*, the defendant was tried for unarmed bank robbery. At the conclusion of his trial, he asked for a jury instruction on irresistible impulse based upon language from *Pollard*. The district court declined to give the instruction, but instead gave a general instruction on the insanity defense using the test we set out in *United States v. Smith*, 404 F.2d 720, 727 (6th Cir.1968).[7] *Hamilton*

---

**4.** The *Pollard* court defined irresistible impulse as

> an impulse induced by, and growing out of, some mental disease affecting the volatile ... powers, so that the person afflicted, while able to understand the nature and consequences of the act charged against him and to perceive that it is wrong, is unable, because of such mental disease, to resist the impulse to do it.

*Pollard*, 282 F.2d at 462 (quotation omitted).

**5.** The *M'Naghten* test provides that a person may establish the defense of insanity if he clearly proves that, at the time he committed the crime, he "was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing; or, if he did know it, that he did not know he was doing what was wrong." *Pollard*, 282 F.2d at 455 (quotation omitted).

**6.** *Pollard* predated the Insanity Defense Reform Act of 1984, 18 U.S.C. § 17, which placed upon the defendant "the burden of proving the defense of insanity by clear and convincing evidence." 18 U.S.C. § 17.

**7.** *Smith* laid out three questions for the jury to consider: (1) Whether the defendant was suffering from a mental illness at the time of the commission of the crime; (2) whether that illness prevented the defendant from knowing the wrongfulness of his act; and (3) whether the mental illness rendered the defendant substantially incapable of conforming his conduct to the requirements of the law he is charged with violating. *United States v. Smith*, 404 F.2d 720, 727 (6th Cir.1968). The *Smith* court further explained:

> A negative finding as to the first question or negative findings as to both the second and

*v. United States,* 475 F.2d 512, 515 (6th Cir.1973). In addition, the court instructed the jury "that if it had a reasonable doubt as to whether, by reason of intoxication, the defendant was able to form a specific intent to commit the crime charged, it should find him not guilty." *Id.* The defendant appealed his conviction based upon the district court's refusal to give the irresistible impulse instruction from *Pollard.* In affirming the conviction, this court held that the instructions sufficiently presented the law to the jury because they preserved the essential elements of irresistible impulse. *See id.*

Although *Hamilton* referred to specific intent, it did not resolve whether bank robbery is a specific intent crime. The only issue before the court was whether the district court failed to instruct the jury on irresistible impulse. In resolving that singular issue, we held that the three questions from *Smith,* along with the specific intent instruction, gave the jury sufficient guidance regarding irresistible impulse.

In *Campbell,* defendants John Campbell and Riley Fultz appealed their § 2113 convictions for two armed bank robberies. They admitted robbing the banks, but asserted the "Wolverine defense," which they characterized as a defense of duress or necessity. *Campbell,* 675 F.2d at 817. Essentially, they contended that while they were in prison they belonged to an organization called the Wolverines and that its president ordered them, under threat of death, to escape from prison and commit the two bank robberies. *Id.* Before trial commenced, the district court ruled that the defendants could not assert their Wolverine defense. *Id.* at 818. The defendants then filed notice of their intention to raise the defense of "mental defect," which they defined as a condition "that caused them to defect to the other side of the law which they found that they could not conform their conduct to the requirements of." *Id.* The court allowed them to assert the mental defect defense on the condition that they submit to the psychiatric examination sought by the government. Campbell agreed to the

examination, but Fultz refused. As a result, the district court severed the trials and allowed Campbell, but not Fultz, to present lay testimony supporting the defense. After Campbell's witnesses testified, however, the court instructed the jury that Campbell had not made out a mental defect defense and removed the issue from its consideration. Following the return of guilty verdicts against them, the defendants appealed. We affirmed the convictions, but disagreed with the district court's basis for preventing Fultz from presenting testimony in support of the mental defect defense. Accordingly, we upheld the district court's decision upon the alternative ground that the mental defect defense, as asserted by the defendants, had no validity under *United States v. Smith,* 404 F.2d 720 (6th Cir.1968).

> Fultz and Campbell were endeavoring to do no more than submit their Wolverine defense under a different label. Joining a criminal conspiracy of federal prisoners designed to violate state and federal laws may well represent "defection" from society, but it would not constitute a defense of "mental defect" without an indication that some sort of mental illness or abnormality was involved. Such is the clear import of *Smith.* No such evidence was ever tendered, nor was it in any way discernible from the motions before the court. What was discernible was that defendants' "mental defect" defense was purely an allegation that Wolverine membership had led to their "defection" from the law-abiding community at-large. While these two defendants may have "defected" from society, such willful behavior does not represent what is referred to as a mental defect within the meaning of federal law.

*Campbell,* 675 F.2d at 820.

In a separate opinion, Judge Martin agreed that Campbell's conviction should be affirmed because the district court gave him the opportunity to present evidence that called into question his mental capacity. *Id.* at 825. However, Judge Martin dissented

third questions would require rejection of the insanity defense. An affirmative finding as to the first question, plus an affirmative finding as to either the second or the third question,

would require a jury verdict of 'not guilty' because of the defendant's lack of criminal responsibility.
*Id.*

653

with regard to Fultz because he disagreed with the majority's holding that the mental defect defense, as asserted by defendants, had no validity. First, Judge Martin cited *United States v. Gay*, 522 F.2d 429 (6th Cir.1975), for the proposition "that the question whether an antisocial or psychopathic personality labors under a mental disease or defect, should not be decided as a matter of law, either affirmatively or negatively. Rather, the question should be submitted to the jury." *Campbell*, 675 F.2d at 823 (emphasis omitted). Second, Judge Martin opined that, "even if Fultz was not technically entitled to rely on a defense of mental disease, he was, nevertheless, entitled to introduce evidence relevant to his mental state at the time of the crime" because § 2113 bank robbery is a specific intent crime.[8] *Id.* at 824 (footnote omitted) (emphasis omitted). In Judge Martin's view, *Hamilton* stood for the proposition that bank robbery is a specific intent crime because *Hamilton* "specifically approv[ed]" the district court's specific intent jury instruction.[9] *Campbell*, 675 F.2d at 824.

The *Campbell* majority did not discuss, let alone decide, whether § 2113(a) is a specific or general intent crime. Instead, it focused upon whether the defendants made any showing that they suffered from a mental illness. Only Judge Martin discussed the issue of specific intent, and he did so within the dissent portion of his separate opinion. Hence, *Campbell* carries no precedential weight with regard to the specific intent issue. Furthermore, as mentioned earlier, we do not construe *Hamilton*, upon which Judge Martin in part based his dissent, as having decided the specific intent issue.

## II.

■■■ Courts generally hold that a specific intent crime is one that requires a defen-

dant to do more than knowingly act in violation of the law. *See, e.g., United States v. Haldeman*, 559 F.2d 31, 114 n. 226 (D.C.Cir. 1976); *United States v. Peralta*, 930 F.Supp. 1523, 1525 (S.D.Fla.1996). The defendant must also act with the purpose of violating the law. *See United States v. Sterley*, 764 F.2d 530, 532 (8th Cir.1985). The violation of a general intent crime, by contrast, requires only that a defendant "intend to do the act that the law proscribes." *United States v. Phillips*, 19 F.3d 1565, 1576–77 (11th Cir. 1994) (footnote omitted); *see also United States v. Blair*, 54 F.3d 639, 642 (10th Cir. 1995).

The grand jury indicted defendant for bank robbery pursuant to the first paragraph of 18 U.S.C. § 2113(a). That entire subsection provides:

(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or

Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny—

Shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 2113(a). The second paragraph of § 2113(a), providing that a defendant must

---

**8.** In other words, Judge Martin believed that, at the very least, Fultz should have been able to introduce mental defect evidence to demonstrate his putative incapacity to form the requisite specific intent. *United States v. Campbell*, 675 F.2d 815, 824 (6th Cir.1982) (Martin, J., concurring and dissenting).

**9.** In his separate opinion, Judge Martin noted that several other circuits have construed § 2113(a) to be a general intent crime. *Campbell*, 675 F.2d at 824. Furthermore, he acknowledged that "[t]his may well be the better rule." *Id.* Nevertheless, according to Judge Martin's reading of the case, *Hamilton* bound him to hold that § 2113(a) describes a specific intent crime. *Id.* at 825.

act "with intent to commit ... any felony," explicitly requires the government to prove that the defendant harbored a specific intent. By contrast, the first paragraph is silent insofar as requiring that a defendant act with any intent at all. Because we agree with the Eighth Circuit's conclusion that Congress showed "careful draftsmanship" by including an intent requirement in the second paragraph, but not the first paragraph, of § 2113(a), *United States v. Johnston*, 543 F.2d 55, 58 (8th Cir.1976); *accord United States v. DeLeo*, 422 F.2d 487, 490 (1st Cir. 1970), we hold that the first paragraph of § 2113(a) describes a general intent crime. The courts of appeals that have drawn a distinction between the two paragraphs of § 2113(a) agree with our conclusion.[10] *See, e.g., United States v. Lewis*, 628 F.2d 1276, 1279 (10th Cir.1980); *United States v. Brown*, 547 F.2d 36, 38–39 (3d Cir.1976); *Johnston*, 543 F.2d at 58; *DeLeo*, 422 F.2d at 490–91.

In summary, we hold that the first paragraph of § 2113(a) describes a general intent crime. Because diminished capacity is not a defense to general intent crimes, the district court did not err when it declined to allow defendant to assert that defense.

## CONCLUSION

For the reasons stated, we **affirm** defendant's convictions.

---

**10.** Three other courts of appeals have held that § 2113(a) describes a general intent crime without distinguishing between the section's two paragraphs. *United States v. Darby*, 857 F.2d 623, 626 (9th Cir. 1988); *United States v. Fazzini*, 871 F.2d 635, 641 (7th Cir.1989); *United States v. Emery*, 682 F.2d 493, 497 (5th Cir.1982).