Kelly, J.
(dissenting'). I disagree that the Legislature has signified its intent to preclude a defendant *242 from negating mens rea by introducing evidence of mental illness short of legal insanity. For the state to obtain a conviction of certain crimes, the Legislature requires that it prove beyond a reasonable doubt that the accused acted with specific intent. I maintain that people accused of those crimes should not be prevented from offering evidence of mental abnormality or illness showing that they acted without the requisite specific intent.
I believe that the majority’s broad rule excluding such evidence lacks sound justification. It violates the presumption of innocence and the due process rights to present a defense and be convicted only upon proof beyond a reasonable doubt of every element of a crime. Thus, I respectfully dissent.[1]
I. DUE PROCESS RIGHTS
The state may not deprive any person “of life, liberty, or property, without due process of law . . . .” US Const, Am XIV; Const 1963, Art 1, § 17. Although an accused has no absolute right to present evidence relevant to his defense, a limitation on his ability to present a defense may, under some circumstances, violate due process. See Rock v Arkansas, 483 US 44, 55; 107 S Ct 2704; 97 L Ed 2d 37 (1987); Chambers v Mississippi, 410 US 284, 294; 93 S Ct 1038; 35 L Ed 2d 297 (1973). Rules excluding evidence contravene the due process right to present a defense when they *243 infringe a weighty interest of an accused or significantly undermine a fundamental element of the defense. See United States v Scheffer, 523 US 303, 308; 118 S Ct 1261; 140 L Ed 2d 413 (1998), citing Rock, supra at 58; Chambers, supra at 302.
Several United States Supreme Court cases have addressed an accused’s right to present evidence in support of his defense. In Chambers,[2] the Supreme Court held that Mississippi’s evidentiary rules deprived the defendant of a fair trial. They prevented him from calling witnesses who would have testified that another witness made trustworthy, inculpatory statements on the night of the crime. The Court reasoned that “where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanically to defeat the ends of justice.” Id. at 302.
In Washington v Texas,[3] the trial court denied the defendant’s request to have a defense witness testify. The court relied on Texas statutes providing that persons charged or convicted as coparticipants in the same crime could testify for the state but not for one another. Defendant sought to call a witness who would have offered relevant and material evidence for the defense. The Supreme Court held that the categorical exclusion of the witness was an unconstitutional and arbitrary denial of the defendant’s rights. Id. at 23.
Later, in Crane v Kentucky,[4] the Supreme Court held that the defendant’s right to have a fair opportu *244 nity to present a defense was violated by the trial court’s blanket exclusion of evidence. The Court found that the evidence was competent and reliable, that it bore on the reliability of a confession, and that it was central to the defendant’s claim of innocence.
The common thread of Chambers, Washington, and Crane is the due process requirement that an accused be permitted a fair opportunity to defend against any and all state accusations. A fair opportunity to defend, if meaningful, must entail adversarial testing of the state’s case against the accused. It must mean that the state may not prevent an accused from raising an effective defense. The state may not impede a defendant’s right to put on a defense by imposing either mechanical or arbitrary rules of evidence. See Montana v Egelhoff, 518 US 37, 63-64; 116 S Ct 2013; 135 L Ed 2d 361 (1996) (O’Connor, J., dissenting, joined by Stevens, Souter, and Breyer, JJ.).
Today, the majority creates a rule per se prohibiting an accused from introducing evidence that, because of mental abnormality or illness, he lacked the specific intent to commit the crime. Under my view of controlling United States Supreme Court authority, this exclusion denies an accused his due process right to present a defense.
Although, as noted, the right is not entirely limitless, an essential component of procedural fairness is an opportunity to be heard. That opportunity becomes an empty one when the state is permitted to exclude competent, reliable evidence directly affecting the ascertainment of guilt. See Crane, supra at 690 (citations omitted); see also Chambers, supra at 302; State v Ellis, 136 Wash 2d 498, 527; 963 P2d 843 (1998); United States v Pohlot, 827 F2d 889, 900-901 *245 (CA 3, 1987). Hence, by foreclosing challenges to the state’s proof concerning an essential element of the crime charged, the majority’s broad rule impermissi-bly undermines a fundamental element of an accused’s defense. It denies defendants with mental abnormalities their due process right to present a defense.
Moreover, the majority has impermissibly diminished the constitutional requirement of prosecutorial proof of guilt beyond a reasonable doubt on each element of the charged offense. The United States Supreme Court held in In re Winship,[5] that due process protects an accused against conviction except upon proof beyond a reasonable doubt of every element of the charged criminal offense. Where a certain mental state is an element of the crime, the government must allege and prove that mental state. See Morissette v United States, 342 US 246, 275; 72 S Ct 240; 96 L Ed 288 (1952).
The case of Martin v Ohio,[6] is instructive. There, the United States Supreme Court considered an Ohio statute that placed on a defendant the burden of proving by a preponderance of the evidence an affirmative defense like self-defense. The Court held that the statute did not violate due process; however, it noted, it would have been error to instruct the jury that “self-defense evidence could not be considered in determining whether there was a reasonable doubt about the state’s case” where Ohio’s definition of the intent element made self-defense evidence the state’s burden. Id. at 233-234. Such an instruction would have *246 been improper because it would have relieved the state of its burden and “plainly run afoul of Winship’s mandate.” Id. at 234.
Here, although the Legislature has required proof beyond a reasonable doubt of mens rea,[7] the majority has rendered inadmissible evidence relevant to negating the mens rea. In so doing, it has foreclosed any meaningful challenge to the prosecution’s proofs. With respect to specific intent crimes, at least, I believe that this “cut[s] against our traditional concept of the adversary system” and “downgrades the prosecution’s burden to something less than that mandated by due process of law.” People v Hendershott, 653 P2d 385, 393 (Colo, 1982).
The majority asserts that Fisher v United States,[8] dispositively answers in the negative the question whether its holding today violates due process. In Fisher, the defendant was charged with first-degree premeditated murder arising from an incident inside a Washington, D.C., library. The defendant was the library’s janitor. The evidence showed that on the fatal morning, the librarian told the defendant that he was not doing the work for which he was being paid, and in the course of her scolding called him a “black nigger.” Id. at 479 (Frankfurter, J., dissenting). In anger, the defendant slapped the librarian “impulsively,” causing her to scream. He then retrieved a piece of wood and struck her with it, after which he seized her by the throat until she went limp.
*247 The defense theory was that he never wanted to kill the librarian, but wanted to stop her screaming, which unnerved him. Id. at 479-480 (Frankfurter, J., dissenting). At the close of proofs, the trial court instructed on insanity, irresistible impulse, malice, deliberation, and premeditation. Over defense counsel’s objection, the trial court refused to give the following instruction:
The jury is instructed that in considering the question of intent or lack of intent to kill on the part of the defendant, the question of premeditation or no premeditation, deliberation or no deliberation, whether or not the defendant at the time of the fatal acts was of sound memory and discretion, it should consider the entire personality of the defendant, his mental, nervous, emotional and physical characteristics as developed by the evidence in the case. [Id. at 470-471, n 6.1[9]]]
Defendant was convicted as charged of first-degree murder.
The Supreme Court affirmed the conviction. It upheld the refusal to give the defendant’s requested instruction. The Court noted that the defendant was challenging a local evidentiary rule that was long established and deeply rooted in the District of *248 Columbia. Id. at 477. It declined to force the District of Columbia to enact the rule of responsibility that the defendant sought, labeling the request “a fundamental change in the common law theory of responsibility.” Id. at 476.[10]
The majority is correct that the Supreme Court in Fisher approved of the refusal to give an instruction bearing on whether a defendant acted with the requisite specific intent. However, I disagree that it resolves the instant defendant’s due process challenge.
First, while the Supreme Court has never explicitly overruled Fisher, it has arguably done so by implication. Fisher must be interpreted in light of subsequent Supreme Court decisions. In my view, the line of cases starting with In re Winship and ending with Martin creates the inference that the rule of Fisher has been implicitly overruled.[11]
In addition, more recent and, in my view, persuasive authority exists demonstrating the constitutional *249 infirmity of barring evidence of one’s mental abnormalities short of insanity to negate specific intent. See, e.g., Pohlot, supra at 901,[12] stating that “a rule barring evidence [of the defendant’s mental abnormality] on the issue of mens rea may be unconstitutional so long as we determine criminal liability in part through subjective states of mind;” see also Ellis, supra at 523; Hendershott, supra at 393.
In light of the above, I believe that Fisher does not control the instant case. Rather, I maintain that the majority’s rule of exclusion violates due process. As the Colorado Supreme Court so astutely stated:
While it may be permissible to permit a jury to infer an essential ingredient of a crime from a proven fact so long as there is a rational connection between the proven fact and the inferred fact, e.g., Barnes v United States, 412 US 837; 93 S Ct 2357; 37 L Ed 2d 380 (1973); Tot v United States, 319 US 463; 63 S Ct 1241; 87 L Ed 1519 (1943), it is quite another matter to insulate this ingredient from disproof by defense evidence. A rule precluding the defendant from contesting the culpability element of the charge would render the prosecution’s evidence on that issue uncontestable as a matter of law, in derogation of the presumption of innocence and the constitutional requirement of prose-cutorial proof of guilty beyond a reasonable doubt. E.g., Sandstrom v Montana, 442 US [510, 520-524; 99 S Ct 2450; 61 L Ed 2d 39 (1979)]; Morissette [supra at 274-275], [Hen-dershott, supra at 391.]
*250 There can be no question that the majority’s holding affixes a heavy burden on defendants’ due process rights. Because the majority provides no plausible justification, I think its holding violates due process.
H. NO PLAUSIBLE JUSTIFICATION FOR THE MAJORITY’S BROAD RULE OF EXCLUSION
According to the majority, by enacting the insanity[13] and guilty but mentally ill (gbmi)[14] statutes, the Legislature created a scheme. It provided the requirements for and the effects of asserting a defense based on mental illness or retardation. The majority deduces from the scheme an intent to bar evidence of a defendant’s lack of mental capacity short of insanity to negate specific intent. I disagree, and find its statutory interpretation analysis unpersuasive.
The first step in statutory interpretation is to give effect to the intent of the Legislature. See Tryc v Michigan Veterans’ Facility, 451 Mich 129, 135; 545 NW2d 642 (1996). To do so, we examine first the specific language of the statute. If the language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we will enforce the statute as written. See In re MCI Telecommunications Complaint, 460 Mich 396, 411; 596 NW2d 164 (1999). This Court should reject an interpretation of a statute that speculates about legislative intent and requires us to add language into the statute. See id. at 414.
*251 Here, importantly, neither the insanity statute nor the GBMI statute mentions the permissibility of using evidence of mental abnormality to negate specific intent. Rather, both statutes concern affirmative defenses available to a legally insane defendant.[15] These two statutes, by their plain language, apply only if a defendant seeks to introduce evidence of a mental illness to justify or excuse an otherwise criminal act.
This clearly contrasts with the introduction of diminished capacity evidence. The use of such evidence does not constitute an affirmative defense. See Pohlot, supra at 897. A defendant claiming diminished capacity does not admit guilt of the crime charged or assert that he is legally insane. Rather, he denies the prosecution’s prima facie case by challenging its claim that he possessed the requisite mens rea at the time of the crime.[16] Hence, insanity evidence to prove the affirmative defense of legal insanity is distinct from diminished capacity evidence to disprove the requisite mens rea of a specific intent crime. See United States v Gonyea, 140 F3d 649, 651 (CA 6, 1998).[17]
I consider the distinction between the two,[18] coupled with the absence of language in the insanity and *252 gbmi statutes addressing the use of evidence of mental abnormality to negate the mens rea. And I cannot conclude that the Legislature intended to bar the use of evidence of one’s mental abnormality short of insanity to negate specific intent when it enacted the insanity and gbmi statutes. See MCI Telecommunications, supra at 414.[19]
I share the majority’s concern that the accused who successfully show that their mental illness negated the requisite mens rea may be set free without treatment or imprisonment. However, that cannot justify reading into legislation a rule of exclusion per se where none exists.
By contrast, our Legislature has made it clear that a person may not be punished for a crime if the prosecution is unable to prove the necessary mens rea.[20] *253 Indeed, as one scholar explained in rejecting a concern similar to the one the majority presents here:
Some may argue that persons who gain a failure of proof defense through the absence of a culpability requirement, through mistake or mental illness negating a required mental element, for example, are nonetheless dangerous. Special deterrence, then, is undercut when such failure of proof defenses are relied upon. The response is simple: if significant purposes of the criminal law are satisfied by a criminal conviction in this situation, then the offense should be redefined without the mental element requirements. If the purposes of conviction and punishment would not be satisfied by such an alteration, then the defense remains appropriate. [1 Robinson, Criminal Law Defenses, § 32(b), p 123, n 8.]
Moreover, in most cases, defendants who successfully negate prosecutors’ proofs will be convicted of a lesser, general intent offense. Even if lesser offenses are inapplicable, procedures exist for civil commitment of those acquitted of crimes who are considered potentially dangerous.[21] In any event, the proper resolution of this concern is not to bar relevant evidence.[22]
The majority also attempts to justify its holding by asserting that a contrary rule would render the insanity defense superfluous. That a defendant has the *254 right to introduce psychiatric evidence to support the affirmative defense of insanity does not justify barring relevant evidence negating the prosecutor’s case in chief. See Pohlot, supra at 901. Also, because evidence supporting an insanity defense and evidence negating specific intent address distinct questions, the breadth of the former is irrelevant to the question of the latter’s admissibility.
The majority has taken the extreme step of barring defendants from introducing psychiatric evidence of mental abnormality to negate the mens rea of the crime charged. Because the rule it creates lacks sound justification, and because it renders the prosecution’s proofs on the intent element essentially uncontestable, it violates defendant’s due process rights. See, generally, Sandstrom, supra at 520-524; Morissette, supra at 275; Martin, supra at 233-234.[23]
m. AUTHORITY FROM OTHER JURISDICTIONS
Several jurisdictions that have considered the admissibility of evidence of mental abnormality to negate mens rea have reached a conclusion contrary to that of the majority today. See Compton, Expert witness testimony and the diminished capacity defense, 20 Am J Trial Advoc 381, 387-388, n 63 (1996-1997); State v Mott, 187 Ariz 536, 555; 931 P2d 1046 (1997) (Feldman, J., dissenting). Nearly every federal circuit court has concluded that the insanity defense *255 reform act[24] does not bar evidence of mental abnormality to negate mens rea. See Pohlot, supra at 900-901; United States v Marenghi, 893 F Supp 85, 89 (D Me, 1995) (collecting cases).
I would follow this persuasive authority, and conclude that evidence of mental abnormality or illness is admissible to negate specific intent. Such a position merely reaffirms three concepts basic to our system of jurisprudence: the right to present a meaningful defense, the requirement that the state prove beyond a reasonable doubt each and every element of a charged offense, and the presumption of innocence.
IV. CONCLUSION
The majority categorically excludes relevant and material evidence that directly concerns an essential element of specific intent crimes. This violates a defendant’s due process right to present a defense, ignores the requirement of proof of guilt beyond a reasonable doubt, and derogates the presumption of innocence. Because the majority fails to justify its heavy burdening of defendant’s due process rights, I am unable to join its opinion.
I write, also, because I am troubled that the majority is deciding this case on a ground that the prosecutor never argued until its brief on appeal to this *256 Court. To the extent that this Court rejects arguments not raised below by criminal defendants, it should reject those not raised below by the prosecution. Adding insult to injury, the majority has turned the prosecution’s tardy argument into a rule of exclusion that, I believe, cannot withstand constitutional scrutiny. For these reasons, I respectfully dissent.
Cavanagh, J., concurred with Kelly, J.

 Generally, mental abnormality evidence may negate only specific intent. Indeed, this was the use approved in People v Lynch, 47 Mich App 8, 20-21; 208 NW2d 656 (1973). Accordingly, the focus here is on psychiatric evidence presented for that purpose. This opinion should not be construed as advocating the use of psychiatric evidence of mental abnormality or illness to negate the requisite mens rea in general intent crimes.

 Supra at 302-303.

 388 US 14; 87 S Ct 1920; 18 L Ed 2d 1019 (1967).

 476 US 683, 687; 106 S Ct 2142; 90 L Ed 2d 636 (1986).

 397 US 358, 363-364; 90 S Ct 1068; 25 L Ed 2d 368 (1970).

 480 US 228; 107 S Ct 1098; 94 L Ed 2d 267 (1987).

 Black’s Law Dictionary (6th ed), defines “mens rea” as “criminal intent.”

 328 US 463; 66 S Ct 1318; 90 L Ed 1382 (1946).

 The requested instruction related to the defendant’s claim that, in assessing whether the defendant, in fact, deliberated, the jury should be able to consider the following factors: defendant’s chronic alcoholic nature, his limited intellect, his limited “judgment and comprehension,” as well as his race. See Siegel, Felix Frankfurter, Charles Hamilton Houston and the “N-word”: A case study in the evolution of judicial attitudes toward race, 7 S Cal Interdisciplinary L J 317, 346-351, 355 (1998), discussing the Fisher decision in great depth. Given these broad proffered factors, one scholar considered Fisher to be arguably more of a provocation case than a diminished capacity case. See id. at 370, stating that the defendant’s real defense was that racism “explained, if not legally caused, the crime.”

 In Griffin v United States, 336 US 704; 69 S Ct 814; 93 L Ed 993 (1949), Justice Murphy stated that the Supreme Court’s decision in Fisher was based, in part, on the Court’s reluctance to upset a District of Columbia evidence rule that existed when the case arose. That rule provided that “ ‘mental deficiency which does not show legal irresponsibility’ is not ‘a relevant factor in determining whether an accused is guilty of murder in the first or second degree.’ ” Id. at 722 (Murphy, J., dissenting); see, generally, Fisher, supra, declining the defendant’s request to declare evidence of mental deficiency short of legal insanity a relevant factor in determining one’s guilt of first-degree murder.

 See Benjamin, The jurisdictional implications of a mens rea approach to insanity: Plugging the “detainment gap” after Foucha v Louisiana, 19 U Dayton L R 41, 61, n 114 (1993); see also United States v Brawner, 471 F2d 969, 1001-1002 (DC CA, 1972) (en banc), superseded by statute on other grounds, as stated in Shannon v United States, 512 US 573, 582; 114 S Ct 2419; 129 L Ed 2d 459 (1994), rejected by Bethea v United States, 365 A2d 64, 83-92 (DC App, 1976), noting how subsequent cases have “undercut the Fisher approach,” which it referred to as “draconic;” Pohlot, supra at 900-901.

 In Pohlot, the Court was unpersuaded by either Fisher or federal circuit court decisions following Fisher. It stated that those cases failed to distinguish “between the use of evidence to negate mens rea and a broader diminished capacity defense. The recent circuit court opinions also focus on the exclusion of expert opinion evidence, not on the exclusion of all evidence of mental abnormality, including the defendant’s own testimony.” Pohlot, supra at 901, n 12.

 MCL 768.21a.

 MCL 768.36.

 The insanity statute provides that legal insanity “[i]s an affirmative defense.” MCL 768.21a. The gbmi statute expressly provides that it applies' “[i]f the defendant asserts a defense of insanity . . . .” MCL 768.36.

 See Morse, Undiminished confusion in diminished capacity, 75 J Crirn L & Criminology 1, 6 (1984).

 Moreover, diminished capacity represents a degree of mental impairment short of legal insanity. See Britton & Bennett, Adopt guilty but mentally ill? — No!, 15 U Tol L R 203, 211 (1983).

 The majority attempts to group diminished capacity evidence into the insanity and GBMI statutory scheme. It does this by asserting that a defendant who uses diminished capacity evidence, like one who uses insanity *252 evidence, is trying to “avoid responsibility.” Ante at 239, n 9. The assertion is simply inaccurate. Put most simply, one who uses diminished capacity evidence seeks merely to ensure that no conviction occurs except upon proof beyond a reasonable doubt of every element of the offense. See Morse, supra at 6. If diminished capacity evidence creates a reasonable doubt regarding one of the elements of the crime charged, the defendant is not “avoiding responsibility” for that crime. Rather, he is attaining that to which he is constitutionally entitled: an acquittal of that offense. See Morissette, supra at 275. In my view, this distinction is significant, and persuades me that the insanity and gbmi statutes evidence no clear legislative intent to exclude diminished capacity evidence.

 Notably, this Court has acknowledged that the legislative intent in enacting the gbmi statute was to “limit the number of persons who, in the eyes of the Legislature, were improperly being relieved of all criminal responsibility by way of the insanity verdict.” People v Ramsey, 422 Mich 500, 512; 375 NW2d 297 (1985) (emphasis in original). This militates against interpreting the gbmi statute as relating to the concept of diminished capacity.

 The situation is analogous to one where a defendant is acquitted of first-degree murder but convicted of manslaughter on the basis of provocation. See Brawner, supra at 1001, stating that when one’s abnormal mental condition short of legal insanity is material in negativing premeditation, it “does not set him ‘at liberty’ but reduces the degree of the criminal homicide.”

 See MCL 330.1472a, providing inter alia, for the civil admission of mentally ill persons; MCL 330.1498a et seq., civil admission of emotionally disturbed minors; MCL 330.1500 et seq., civil admission of developmental^ disabled individuals; see also Hendershotl, supra at 395.

 See People v Wetmore, 22 Cal 3d 318, 328; 149 Cal Rptr 265; 583 P2d 1308 (1978), superseded by 1981 Cal Stat 404, § 4, current version at Cal Penal Code, §§ 28-29 (West 1988), stating that “we do not perceive how a defendant who has in his possession evidence which rebuts an element of the crime can logically be denied the right to present that evidence merely because it will result in his acquittal.”

 Given that this Court recognizes evidence of voluntary intoxication to negate specific intent, the majority’s rejection of mental abnormality evidence, used for the very same purpose, defies explanation. See Brawner, supra at 999; State v Phipps, 883 SW2d 138, 148 (Term Crim App, 1994); State v Correra, 430 A2d 1251, 1253-1254 (RI, 1981).

 18 USC 17 provides, in pertinent part:
(a) Affirmative defense. It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.